0243

SOUTH CAROLINA ELECTRIC AND GAS COMPANY, Appellant, v. COMBUSTION ENGINEERING, INC. and Daniel International Corporation, Respondents.

(322 S. E. (2d) 453)

Court of Appeals

---

[1] The above dissent was written in response to the original majority opinion, some four pages less voluminous.

*Stephen G. Morrison* and *Rhett P. Dove, III*, of *Nelson, Mullins, Grier & Scarborough*, Columbia, *for appellant.*

*Jay Bender*, of *Belser, Baker, Barwick, Toal & Bender, Belser, Ravenel & Smith*, and *Thomas Kemmerlin, Jr.*, Columbia and *V. M. Manning Smith, III*, Beaufort, *for respondents.*

Heard March 27, 1984.

Decided Aug. 29, 1984.

GOOLSBY, Judge:

The appellant South Carolina Electric and Gas Company (SCE&G) seeks to recover damages in excess of $350,000 that SCE&G alleges it sustained as a result of a fire that occurred when a flexible metal hose ruptured and sprayed heated fuel oil across the surface of a steam generating boiler at the Arthur Williams Station, a power generating plant owned by SCE&G. The circuit court granted summary judgment in favor of the respondent Combustion Engineering, Inc. (Combustion), which manufactured and sold the boiler and its ancillary equipment to SCE&G, and the respondent Daniel International Corporation (Daniel), which constructed the power plant and installed the boiler as well as the pipes and hoses that connected to it.

SCE&G appeals the grant of summary judgment in favor of Combustion on causes of action for (1) breach of an implied warranty that the boiler unit was fit for a particular purpose, (2) breach of an implied warranty that the boiler unit was merchantable, and (3) negligence in the design of the fuel piping. It also appeals the grant of summary judgment in favor of Daniel on causes of action for (1) negligent installation of boiler unit and (2) breach of a warranty of workmanship. We affirm in part, reverse in part, and remand the case for trial.

In considering the overall issue of whether the circuit court was correct in granting the defendants' motions for summary judgment, we must construe all ambiguities, conclusions, and inferences arising from the evidence

most strongly against the defendants. *Piedmont Engineers, Architects and Planners, Inc. v. First Hartford Realty Corp.*, 278 S. C. 195, 293 S. E. (2d) 706 (1982). Summary judgment can be granted only when it is perfectly clear that no genuine issue of material fact is involved and inquiry into the facts is not desirable to clarify application of the law. *Hudson v. Zenith Engraving Co. Inc.*, 273 S. C. 766, 259 S. E. (2d) 812 (1979).

## I. Case Against Combustion

### A. Implied Warranties

SCE&G entered into the contract with Combustion for the sale of the boiler unit in early 1970. The sales contract contains an item labeled "WARRANTY," that expressly warrants the equipment to be free "from defects in material and workmanship for a period of one year." Because the boiler became operational on March 18, 1973, and the fire that brought on this litigation occurred over two years later on May 19, 1975, the one-year warranty provision had expired at the time of the fire.

The warranty item also contains a disclaimer of warranties provision. It states that "[t]here are no other warranties, whether expressed or implied, other than title."

The circuit court, in granting Combustion summary judgment on each cause of action alleging a breach of an implied warranty, ruled that the disclaimer excludes an implied warranty of merchantability as well as an implied warranty for fitness for a particular purpose.

SCE&G, however, maintains that Combustion was not entitled to summary judgment. It argues that the disclaimer, as a matter of law, does not exclude the implied warranties alleged in its complaint because the disclaimer does not meet the requirements of Subsection (2) of Section 36-2-316 of the South Carolina Code of Laws (1976) and that a question of fact exists as to whether the disclaimer can come within the exceptions to Subsection (2) permitted by Subsection (3) of that statute.[1]

---

[1] Section 36-2-316 of the Code provides in part as follows:

(1) ...

(2) Subject to subsection (3), to exclude or modify the implied warranty of merchantability or any part of it the language must mention

We agree with SCE&G that the disclaimer does not satisfy the requirements of Subsection (2). First of all, the disclaimer nowhere mentions the word "merchantability," as it must do under Subsection (2) to exclude an implied warranty of merchantability.

Further, the written language of the disclaimer, as a matter of law, is not "conspicuous," as Subsection (2) requires it to be to exclude an implied warranty of fitness for a particular purpose as well as an implied warranty of merchantability. Indeed, the written agreement is twenty-two typewritten pages in length and is mostly single-spaced. The disclaimer itself appears on page 17 of the agreement in the last sentence of a two-paragraph item. It is indistinctive both as to color and as to type. *See* S. C. Code of Laws § 36-1-210(10) (1976) ("A ... clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it. ... Language in the body of a form is 'conspicuous' if it is in larger or other contrasting type or color"); *Billings v. Joseph Harris Company, Inc.*, 27 N. C. App. 689, 220 S. E. (2d) 361 (1975); *Chrysler Corp. v. Wilson Plumbing Company, Inc.*, 132 Ga. App. 435, 208 S. E. (2d) 321 (1974).

Moreover, the item containing the disclaimer is misleading in that it is suggestive of "a grant of warranty rather than a

---

merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude the implied warranty of merchantability or of fitness for a particular purpose must be specific, and if the inclusion of such language creates an ambiguity in the contract as a whole it shall be resolved against the seller.

(3) Notwithstanding subsection (2)

(a) unless the circumstances indicate otherwise, all implied warranties are excluded by specific language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty; and

(b) when the buyer before entering into the contract has examined the goods or the sample or model as fully as he desired or has refused to examine the goods there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed to him; and

(c) an implied warranty can also be excluded or modified by course of dealing or course of performance or, between merchants, by usage of trade.

(4) ...

disclaimer" because the heading of the item, printed in underlined capital letters, simply reads *"WARRANTY." Hartman v. Jensen's Inc.,* 277 S. C. 501, 503, 289 S. E. (2d) 648 (1982).

But the question remains concerning whether a genuine issue of material fact exists as to whether the disclaimer, as the circuit court found, falls within the exception prescribed by Subsection (3)(a). Subsection (3)(a) permits, as do Subsections (3)(b) and (c), the exclusion of implied warranties when "the circumstances surrounding the transaction are in themselves sufficient to call the buyer's attention to the fact that no implied warranties are made or that a certain implied warranty is excluded." S. C. Code of Laws § 36-2-316 official comment 6 (1976).

In support of its motion for summary judgment, Combustion submitted the affidavit of Kurt W. Johnson that identified several documents exchanged between Combustion and SCE&G relative to the purchase by SCE&G of the boiler from Combustion. The first document, dated August 15, 1968 and entitled "Proposal No. 16268-E," originated with Combustion. It included the disclaimer at issue here. Five months later on January 31, 1969, SCE&G wrote Combustion stating that its August 1968 proposal was unacceptable in certain respects. SCE&G advised Combustion that it required that any purchase order filled by Combustion be subject to certain prescribed conditions. One condition was that Combustion agree "to be bound in relation to [its] equipment by the . . . warranties implied by the laws of the State of South Carolina."

Combustion responded to SCE&G's letter on February 19, 1969, and informed SCE&G that it could not accept the conditions relating to implied warranties. Combustion insisted that it "have a limitation on the warranty period and a limitation on the remedy for breach of any warranty, expressed or implied." On February 21, 1969, SCE&G replied to Combustion's letter of two days before and advised Combustion that it agreed that the "warranties implied by [the] laws of the State of South Carolina shall be limited" to the warranty item included in the original proposal.

The parties differ concerning whether the correspondence mentioned above forms part of the contract and whether it constitutes evidence extrinsic to the contract. SCE&G maintains that the correspondence is not part of the contract and

that consideration of it by the circuit court to determine whether the disclaimer is effective demonstrates conclusively that the disclaimer is ambiguous. SCE&G relies on the settled rule that the intention of the parties to an ambiguous contract is a question of fact for the jury to determine and is not a question that a court should decide on summary judgment. *See Wheeler v. Globe & Rutgers Fire Insurance Co.*, 125 S. C. 320, 325, 118 S. E. 609 (1923) ("where a contract is not clear, or is ambiguous and capable of one or more constructions, what the parties really intended, as a matter of fact, should be submitted to a jury").

We need not decide whether the correspondence forms part of the contract because we think that the language of the disclaimer itself is unambiguous. In plain language, the disclaimer excludes all warranties other than the express one-year warranty and the warranty of title.

Although we do not use the correspondence to resolve an ambiguity in the language employed by the disclaimer, we do consider the correspondence to determine whether the language of the disclaimer was unbargained for and unexpected by SCE&G, the buyer. If the evidentiary material presented in connection with Combustion's motion for summary judgment shows that no genuine issue of fact exists as to whether the language of disclaimer was unbargained for and unexpected and that, as a matter of fact, the language was bargained for and expected, SCE&G could not rightly claim, irrespective of the requirements of Subsection (2), that the language does not exclude the two implied warranties asserted by Combustion. *See* S. C. Code of Laws § 36-2-316 official comment 1 (1976) (Subsections (2) and (3) designed to protect the buyer from "unexpected and unbargained language of disclaimer"). In such a case, summary judgment for Combustion would be entirely proper.

As we view the record, Combustion was entitled to summary judgment as a matter of law on the causes of action alleging breaches of implied warranties of merchantability and fitness for a particular purpose.

Circuit Court Rule 44(d) provides in part as follows:

When a motion for summary judgment is made and supported as provided in this Rule, an adverse party may

not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Where, then, a party makes no factual showing in opposition to a motion for summary judgment, the court must grant summary judgment to the moving party if, under the facts presented, the latter is entitled to summary judgment as matter of law. *Arrants v. Rankin*, 268 S. C. 567, 235 S. E. (2d) 135 (1977); *Garrett v. Reese*, 262 S. C. 327, 204 S. E. (2d) 432 (1972).

The correspondence exchanged between Combustion and SCE&G relating to the warranty item and submitted in support of Combustion's motion for summary judgment discloses that the language of disclaimer included in the warranty item came as no surprise to SCE&G and that SCE&G in fact bargained with Combustion over a period of seven months concerning it. SCE&G makes no factual showing to the contrary. As the correspondence indicates, the disclaimer, which is written in simple language, was subjected to detailed review by SCE&G and was agreed upon by SCE&G only after Combustion refused to accept SCE&G's condition that Combustion be bound by the "warranties implied by the laws of the State of South Carolina."

In addition, both corporations are commercially sophisticated and possess relatively equal bargaining strength. The sheer size of the transaction itself ($12,139,786.00) and the length of the negotiations (approximately nineteen months) suggest as much. As in *AMF Incorporated v. Computer Automation, Inc.*, 573 F. Supp. 924, 930 (S. D. Ohio 1983), which also involved "commercially sophisticated businesses," it would strain "credulity to hold that a business like [SCE&G] was not, or should not have been, aware of the language disclaiming implied warranties."

We therefore hold that an effective disclaimer of implied warranties under Subsection (3)(a) was shown; thus, the language of the disclaimer at issue here was effective notwithstanding its failure to satisfy the requirements of Subsection

(2). *See Tennessee Carolina Transportation Inc. v. Strick Corp.*, 283 N. C. 423, 196 S. E. (2d) 711 (1973) (*dictum* that actual awareness by a nonconsumer buyer of a disclaimer prior to entering into a sales contract and possession of substantially equivalent bargaining power satisfies purpose of "conspicuous" requirement); *cf. Country Clubs, Inc. v. Allis-Chalmers Manufacturing Co.*, 430 F. (2d) 1394, 1397 (6th Cir. 1970) (exclusion of implied warranties of merchantability upheld under Subsection 3(c) where course of dealing indicated buyer "had acquiesced in the limited warranty provision" and sale involved experienced businessmen dealing at arm's length).

## B. Negligence

Included in SCE&G's action against Combustion is a claim that Combustion negligently designed the "boiler and its ancillary equipment ... including the flexible metal hose" that ruptured and "the stationary piping" that supplied fuel to the hose. In granting summary judgment to Combustion on the claim based on negligent design, the circuit court ruled that a limitation of liabilities item in the contract, commonly known as an "exculpatory clause," barred the claim because the loss occurred after the expiration of the one-year warranty period. The provision provides in part:

> LIMITATIONS OF LIABILITY — The liability of [Combustion] to [SCE&G] arising out of the *manufacture*, sale, delivery, use, or resale, of the Equipment whether based on warranty, contract, negligence, strict liability or otherwise, shall not exceed the cost of correcting defects in the Equipment as herein provided. Upon the expiration of the warranty period, all such liability shall terminate. [Emphasis ours.]

We think the circuit court erred in dismissing SCE&G's cause of action based on negligent design and in granting Combustion summary judgment as to that claim.

Implicit in the circuit court's ruling is the finding that the word "manufacture" either includes within its meaning or is equivalent to the word "design" so that the exculpatory clause relieves Combustion of liability for negligent "design" after the expiration of the one-year warranty period. Although

"the word 'manufacture' . . . is susceptible of many applications and many meanings" [55 C.J.S. *Manufactures* § 1a(1) at 667 (1948) ], it is not a word that is synonymous with the word "design." WEBSTER'S NEW COLLEGIATE DICTIONARY at 701 (1973); WEBSTER'S NEW DICTIONARY OF SYNONYMS at 521 (1973).

Contracts that seek to exculpate a party from liability for the party's own negligence are not favored by the law. *Pride v. Southern Bell Telephone & Telegraph Co.*, 244 S. C. 615, 138 S. E. (2d) 155 (1964). An exculpatory clause, our Supreme Court has held, is to be strictly construed against the party relying thereon. *Id.* "It will never be . . . construed . . . to exempt [a party] from liability for his own negligence . . . in the absence of explicit language clearly indicating that such was the intent of the parties." *Hill v. Carolina Freight Carriers Corp.*, 235 N. C. 705, 71 S. E. (2d) 133, 137 (1952).

The language used in the exculpatory clause in this case does not explicitly exempt Combustion from liability arising out of the "design" of the equipment. Strictly construed, the exculpatory clause does not permit the conclusion that the parties intended that it would do so. We hold then that the exculpatory clause does not shield Combustion from liability for negligent design.

SCE&G also seeks to maintain an action against Combustion for negligent manufacture, an action clearly barred by the exculpatory clause. Relying upon *Pride v. Southern Bell Telephone & Telegraph Co., supra,* SCE&G argues that the exculpatory clause is void because it is against public policy. We disagree.

The *Pride* case, which was decided on demurrer, supports Combustion, not SCE&G. There, the Supreme Court permitted a public utility to assert an exculpatory clause against a private party to protect itself from liability for its own negligence. Here, a private party seeks to assert an exculpatory clause against a public utility for the same purpose. We see no reason why Combustion should not be allowed to take advantage of an exculpatory provision in this instance. As we read the record before us, there is a singular absence of the "[c]onsiderations of public policy" referred to by the Supreme Court in *Pride* that "would override the fundamental right of freedom of contract." 138 S. E. (2d) at 157.

The relationship between SCE&G and Combustion arose by reason of their private contract and not by virtue of any duty owed by either party to the public. SCE&G was not compelled to contract only with Combustion and Combustion was not forced to deal solely with SCE&G. Both parties are large corporations who bargained equally and at arm's length for the contract in question, as evidenced by the back and forth flow of correspondence that we discussed before. We therefore find the argument that the exculpatory clause is void as against public policy to be wholly without merit.

## II. Case Against Daniel

Initially, we note that Daniel contests upon various grounds the inclusion of certain material in the record on appeal and seeks to have this court disregard it in passing on the propriety of the grant to Daniel of summary judgment. We need not decide, however, whether the material Daniel wishes to exclude from the record may properly be considered. Even when it is disregarded, enough evidentiary matter remains that discloses genuine issues of material fact regarding both the negligence and breach of warranty causes of action thereby making summary judgment inappropriate.

In determining whether the circuit court erred in granting Daniel summary judgment, we need only consider the affidavit of M. Leroy Smith, a mechanical engineer and longtime employee of SCE&G, that SCE&G proferred in opposition to Daniel's summary judgment motion.

Smith states in his affidavit that the fire at the Arthur Williams Station on May 19, 1975, "was caused by the rupture of a flexible metal fuel hose at the B-9 boiler burner station." As we interpret Smith's affidavit, the flexible metal hose was connected to a system of pipes known as "field run piping" which in turn was attached to another pipe system known as "stationary piping." The purpose of the flexible metal hose was to transfer fuel oil from the field run piping and stationary piping to a movable burner assembly. The burner injected fuel oil into the boiler as it moved in and out.

According to Smith's affidavit, Daniel, as general contractor of the Arthur Williams Station, erected the boiler assembly, "including the fuel piping system." In constructing the latter, Daniel was to have followed plans furnished to it by

Gilbert Associates. (SCE&G provided the plans and specifications prepared by Gilbert Associates to Daniel.) Daniel, however, decided upon the "location, routing and construction of 'field run piping' " and "how the 'field run piping' approached the burner assembly and ... ultimately connected to the flexible metal fuel hose." SCE&G personnel had no responsibility for designing the arrangement of the field run piping. Further, they lacked expertise in that area.

Smith's affidavit also indicates that the rupture in the flexible metal hose "was caused by metal fatigue" and "occurred in the inner liner of the hose beneath [a] protective woven metal shield," an area not open to visual observation. The rupture came about "because the 'field run piping,' as it approached the burner assembly, caused the flexible metal hose to move in a plane for which it was not designed."

In Smith's opinion, the " 'field run piping' arrangement ... did not comport with commonly accepted engineering practices."

### A. Negligence

In granting Daniel summary judgment on the negligence cause of action, the circuit court held that Daniel could not be liable for negligence in deciding how the field run piping was to be arranged because Daniel merely followed the plans and specifications prepared by Gilbert Associates and furnished by SCE&G when it installed the boiler assembly. As indicated above, however, Smith's affidavit suggests that Daniel personnel, and not the plans and specifications furnished Daniel by SCE&G, determined the placement of the field run piping.

We think it clear, then, that there exists a genuine issue of material fact regarding whether Daniel was responsible for determining the position of the field run piping and, if so, whether Daniel was negligent in arranging the field run piping as it did; therefore, summary judgment should not have been granted Daniel on the cause of action alleging negligence.

### B. Warranty of Workmanship

SCE&G alleges in its complaint that Daniel warranted that its work "would be of good quality and free from faults and defects." In its answer, Daniel admits that it

was to undertake the construction of SCE&G's "steam-electric generating unit in accordance with [SCE&G's] specifications . . . and in a good and workmanlike manner." Section 14 of the Contractual Conditions, which represents the contract between SCE&G and Daniel, provides in part:

It is expressly stipulated that [SCE&G's] only interest is in the completed job according to the terms and conditions herein provided in this agreement; subject, however, always to the right of [SCE&G] to inspect the work at anytime, and from time to time as it progresses, for the purpose of determining if it is being done in accordance with the owners' specifications, programs, and in a good and workmanlike manner, according to the terms of this agreement.

The circuit court, citing *Cantrell v. Woodhill Enterprises, Inc.,* 273 N. C. 490, 160 S. E. (2d) 476 (1968), which relied upon 13 Am. Jur. (2d) *Building and Construction Contracts* § 55 (1964) and what is now 17 Am. Jur. (2d) *Contracts* § 394 (1964), found that SCE&G's inspection and acceptance of Daniel's work constituted a waiver of any breach by Daniel of its contract with SCE&G and entitled Daniel to summary judgment as to the cause of action based upon breach of warranty.

If anything, *Cantrell* supports SCE&G's position. In that case, the North Carolina Supreme Court through Justice Sharp quoted the following statement from *Salem Realty Co. v. Batson,* 256 N. C. 298, 123 S. E. (2d) 744, 751 (1962):

" 'Where work is accepted with knowledge that it has not been done according to the contract or under such circumstances that knowledge of its imperfect performance may be imputed the acceptance will generally be deemed a waiver of the defective performance. But this rule does not apply to latent defects. The acceptance of work which has been defectively done, the defects being unknown and not discoverable by inspection, does not amount to a waiver of the imperfect performance.' "

160 S. E. (2d) at 481. We think the inferences arising from Smith's affidavit clearly raise genuine issues of material fact regarding the existence of latent defects in the manner in which the field run piping was positioned.

In his affidavit, Smith indicates, before noting that SCE&G personnel were untrained in designing field run piping, that the effects of the stress placed on the hidden metal lining of the flexible hose by the piping arrangement could not have been discovered during SCE&G's visual inspection of the hose. Obviously, the question of whether Daniel's installation, as it related to the arrangement of the field run piping, was performed in a good and workmanlike manner and whether a latent defect existed which would preclude any waiver by SCE&G on account of its acceptance of the work raise genuine issues of material fact as to Daniel's performance under the contract. Whether SCE&G should have discovered the defect in exercising its right to inspect Daniel's work, we think, is a question of fact for a jury. *Johnston Manufacturing Co. v. Wilson Thread Co.*, 269 Fed. 555 (4th Cir. 1920).

Summary judgment, therefore, likewise should not have been granted Daniel on the cause of action alleging breach of warranty.

Affirmed in part, reversed in part, and remanded.

GARDNER and CURETON, JJ., concur.