0636

GAMBLE, GIVENS & MOODY, a Partnership by John M. GAMBLE, Jr., Ronnie M. Givens, William A. Moody, Jr., and John G. Game, its Partners, Appellants v. Robert M. MOISE, Humphries & Moise, a Partnership, by Robert M. Moise and Francis A. Humphries, Respondents, and Francis A. HUMPHRIES, Respondent v. John M. GAMBLE, Jr., Ronnie M. Givens, William A. Moody, Jr., and John G. Game, Individually and as Co-Partners under the name and guise, Gamble, Givens and Moody, Appellants.

(341 S. E. (2d) 147)

Court of Appeals

---

*Diane Schafer Goodstein* and *Arnold S. Goodstein* of *Goodstein & Goodstein,* North Charleston, *for appellant.*

*Robert N. Rosen* of *Rosen, Oberman & Rosen* and *Charles C. Bernstein,* Charleston, *for respondents.*

Heard Dec. 10, 1985.

Decided Feb. 14, 1986.

GOOLSBY, Judge.

This appeal from cases consolidated for trial involves actions for an accounting and for the recovery of payments allegedly owed by a withdrawing partner for goodwill. The questions on appeal relate to the interpretation of a partnership agreement and to the value of certain partnership assets.

John M. Gamble, Jr., Ronnie M. Givens, William A. Moody, Jr., and Francis A. Humphries formed an accounting partnership in 1972. John G. Game became a partner in 1975, the year the partners reduced their partnership agreement to writing.

Robert M. Moise joined the partnership in 1978. The partnership agreement was amended to include him as a partner. The partners agreed in a separate written agreement to value the goodwill "purchased" by Moise from the other partners at $48,000.

In 1981, Moise and Humphries withdrew from the partnership and formed their own firm.

Gamble, Givens, Moody and Game as partners in a partnership (hereafter "the Partners") brought this action initially against Moise. Among other things, the Partners sought an accounting and payment for the value of goodwill Moise allegedly owed them when he withdrew as a partner.

The Partners later amended the complaint to assert an action based on an alleged constructive trust against Moise and Humphries as partners in a partnership formed by the latter two.

Moise counterclaimed against the Partners and alleged an action for an accounting. Humphries brought an action against the Partners in which he also sought an accounting. Moise and Humphries both claimed an interest in two assets

of the partnership, a share of First Magnolia Partnership and stock in Management Design Associates, Inc.

The trial court tried the consolidated cases in equity and found against the Partners. It held the Partners were not entitled to recover payments from Moise for goodwill, Moise and Humphries were entitled to their interests in First Magnolia, and Humphries was entitled to his interest in Management Design. The trial court valued First Magnolia and Management Design according to their fair market value. It dismissed the action against Moise and Humphries based on an alleged constructive trust.

The Partners appealed. In oral argument before this court, their counsel abandoned the constructive trust claim.

I.

The Partners contend the trial court erred in finding that the partnership agreement does not require a withdrawing "new partner" to satisfy any debt he may owe the original or "existing partners" for goodwill.

The partnership agreement provides in pertinent part as follows:

IX. SETTLEMENT UPON WITHDRAWAL OR EXPULSION

The goodwill provisions of this agreement as stated in Article X will be null and void as respects the interest therein of any withdrawing or expelled partner.

A withdrawing or expelled partner who has been receiving goodwill payments from another partner shall not be entitled to receive any such goodwill or interest payments which become due after notice of withdrawal or expulsion, whether such payments become due under their original terms or deferred terms as stated in Article XI.

The withdrawing or expelled partner's interest in cash basis capital, less accounts payable and accrued expenses allocable to his interest, shall be paid within 120 days from the date of disassociation, without interest. ...

. . . .

X. GOODWILL

Goodwill of the firm is to be computed as 100% of one year's accrual basis fees of the firm based on the average accrual basis fees for the two full calendar years immedi-

ately preceding the date of computation, less the average client advances computed in the same manner.

The percentage of the firm's goodwill allocable to a partner is determined by applying such partner's current profit sharing percentage to the total goodwill of the firm.

. . . .

Any transfer of profit sharing percentages between partners ... must include the transfer of goodwill allocated to such profit sharing percentage transferred and shall be paid for in the same manner as a newly admitted partner pays for goodwill. ...

## XI. ADMISSION OF NEW PARTNERS

. . . .

Upon admission of a new partner, goodwill shall be computed in accordance with Article X and a sale of goodwill between the existing partners and the new partner shall be made. The sale of goodwill shall be between the individual partners based on the profit sharing percentages transferred from partner to partner; however, the firm will collect payments made by the purchaser and will credit such payments to the selling partners' capital accounts.

. . . .

Payment for goodwill by the newly admitted partner may be made in ten (10) equal annual installments with interest at the rate of 6% per annum computed on the remaining balance. During the period of payment for goodwill, the newly admitted partner's percentage of cash basis partnership earnings in excess of guaranteed salary equivalent ... is applied first to his cash basis capital requirement, then to accumulated interest of his goodwill balance, then to his annual goodwill installment, then to availability for withdrawal.

When the newly admitted partner's cash basis earnings in any year are insufficient to meet any of the applications above, then the following payment schedule is effective for ... deferred payments:

1. Cash basis capital requirement—To be paid out of the first increment of cash basis earnings above guaranteed salary equivalent for the following year.

2. Interest on goodwill balance—To be paid in the first year in which cash basis earnings exceed guaranteed salary equivalent and cash basis capital requirements.

3. Annual goodwill installment—To be paid in the year following completion of the original term of goodwill payments plus one year for each previously deferred full annual goodwill payment. Two or more partial annual goodwill payments which have been deferred shall be added together to determine the number of years of deferral as defined above.

The partnership agreement nowhere specifically requires a "new partner," who still owes the "existing partners" an amount for the goodwill Article XI obligates him to purchase on admission to the partnership, to pay the "existing partners" for the amount owed by him for goodwill upon his withdrawal from the partnership. Because it does not do so, the trial court found the partnership agreement ambiguous and held Article IX's language extinguishes any debt owed by a "new partner" for goodwill when he withdraws from the partnership.

In construing a contract, the primary objective is to ascertain and give effect to the intention of the parties. *Williams v. Teran, Inc.*, 266 S. C. 55, 221 S. E. (2d) 526 (1976); *Bruce v. Blalock*, 241 S. C. 155, 127 S. E. (2d) 439 (1962). The parties' intention must, in the first instance, be derived from the language of the contract. *Superior Automobile Insurance Co. v. Maners*, 261 S. C. 257, 199 S. E. (2d) 719 (1973). If its language is plain, unambiguous, and capable of only one reasonable interpretation, no construction is required and the contract's language determines the instrument's force and effect. *Blakeley v. Rabon*, 266 S. C. 68, 221 S. E. (2d) 767 (1976); *Fryar v. Currin*, 280 S. C. 241, 312 S. E. (2d) 16 (Ct. App. 1984). Mere lack of clarity on casual reading is not the standard for determining whether a contract is afflicted with ambiguity. *McCann v. Glynn Lumber Co.*, 199 Ga. 669, 34 S. E. (2d) 839 (1945).

We examine, then, the partnership agreement to determine whether the intention of the parties regarding a "new partner's" obligation to pay for goodwill in the event he still owes therefor on withdrawal from the partnership can be discerned from its language alone.

Although Article IX affects a withdrawing "new partner's" interest in goodwill, Article IX cannot reasonably be construed to relieve him from any debt resulting from his purchase of goodwill on becoming a partner.

Article IX's first paragraph renders inapplicable to a

withdrawing or expelled partner the provisions relating to goodwill contained in Article X. Those provisions prescribe the methods by which the value of goodwill is to be determined and allocated among the partnership and by which a partner is to pay for goodwill when a transfer of profit sharing percentages occurs between partners. By voiding the application of Article X's provisions to a withdrawing or expelled partner, Article IX extinguishes the withdrawing or expelled partner's right to the goodwill allocated by Article X.

Article IX's second paragraph terminates a withdrawing or expelled partner's right to receive payments for goodwill and interest from another partner after notice of his withdrawal or expulsion.

To construe Article IX to mean that a debt owed by a ▆▆ "new partner" for goodwill is extinguished by his withdrawal or expulsion from the partnership is to rewrite the contract. A court, however, under the guise of "interpretation" or "construction" may not rewrite an agreement for the parties. *Ames v. American National Bank of Portsmouth*, 163 Va. 1, 176 S. E. 204 (1934); *see McElmurray v. American Fidelity Fire Insurance Co.*, 236 S. C. 195, 113 S. E. (2d) 528 (1960).

The failure of the partnership agreement, either in Article IX or in any other article, to address a "new partner's" obligation on withdrawal from the partnership to pay for goodwill, if the "new partner" still owes the "existing partners" therefor, does not render the contract ambiguous.

Indeed, under Article XI of the partnership agreement a new partner's obligation to pay the "existing partners" for goodwill arises upon his admission to the partnership. A "new partner," obviously, may pay the "existing partners" for the goodwill immediately in a lump sum. By express terms of the partnership agreement, he may also pay the "existing partners" for goodwill "in ten (10) equal annual installments with interest" or from his excess earnings in accordance with the deferred payment schedule set forth in Article XI.

A "new partner's" withdrawal or expulsion from the partnership, of course, makes it impossible for him to utilize the deferred payment method. Still, the other methods of pay-

ment remain available to satisfy any indebtedness owed by a withdrawing or expelled partner for goodwill.

Moise's debt for goodwill, which is in nowise contingent but which became fixed and absolute the moment he joined the partnership, was not cancelled by his leaving the partnership. To hold otherwise would mean the "existing partners," when they admitted Moise as a partner, intended to make him a "gift of goodwill" despite clear language in Article XI providing for a "sale of goodwill."

While it is true, as the trial court found, "the contract contains no specific obligation for any withdrawing partner to pay for 'goodwill,' " it is likewise true the contract very plainly and unambiguously requires a "new partner" to purchase goodwill from the "existing partners" upon his admission to the partnership.

We do not overlook the trial court's holdings that the ■ enforcement on a "new partner's" withdrawal from the partnership of his obligation to purchase goodwill constitutes either a forfeiture or penalty and renders the partnership agreement "a *de facto* non-competition clause." These holdings are clearly erroneous.

As we view the partnership agreement, neither a forfeiture nor a penalty is involved. By the terms of the partnership agreement, Moise became obligated to buy goodwill when he joined the partnership, not when he left it. His obligation to purchase goodwill from the "existing partners" arose irrespective of whether he later elected to remain with the firm or to leave it. The partnership agreement requires the purchase of goodwill by a "new partner," not as a penalty for withdrawal or expulsion, but as a condition of membership in the partnership. *Cf. Tate v. Le Master*, 231 S. C. 429, 442, 99 S. E. (2d) 39, 46 (1957) ("A ... forfeiture, is 'that which is lost, or the right to which is alienated, by a crime, offense, neglect of duty, or breach of contract.' ").

Moreover, the requirement that Moise, as a "new partner," pay the "existing partners" for goodwill does not imply the idea of punishment. Rather, it connotes the idea of compensation. *Cf. id.*, 231 S. C. at 441, 99 S. E. (2d) at 45 (implicit in the meaning of "penalty" is the idea of punishment).

We have considerable difficulty viewing an enforcement

of Moise's obligation to pay for goodwill as a *"de facto* non-competition clause."* Moise is free to compete with his former partners. He is not restricted territorially or otherwise. *Cf. Oxman v. Sherman,* 239 S. C. 218, 122 S. E. (2d) 559 (1961) (covenant by an employee not to compete with his employer after termination of employment will ordinarily be upheld if, among other things, it is reasonably limited in its operation with respect to time and place).

The trial court erred, therefore, in voiding Moise's obligation to pay the "existing partners" the amount owed by him for goodwill.

Although our holding may subject Moise to hardship, ■ nonetheless it is the court's duty to enforce the contract made by the parties. Hardship alone provides no basis for relieving one from a contract. *See Belk's Department Store of New Bern, N. C. v. George Washington Fire Insurance Co.,* 208 N. C. 267, 180 S. E. 63 (1935).

## II.

The Partners contend the trial court in its accountings improperly valued the partnership's share in First Magnolia and its stock in Management Design, two assets held by the partnership at the time Moise and Humphries withdrew.

In determining the worth of the Management Design stock, the trial court inconsistently used fair market value in its accounting for Humphries and book value in its accounting for Moise. The trial court, however, used fair market value to determine the worth of the partnership's share in First Magnolia. With particular reference to the share in First Magnolia, which the partnership acquired after 1975, the trial court found "it [was not] comprehended by the 1975 partnership agreement that First Magnolia [would] be treated . . . on a . . . book value basis."

An action for an accounting is equitable in nature. ■ *Fryar v. Currin, supra.* In an action in equity, tried as this one was before the judge alone without a reference, the Court of Appeals has jurisdiction to find the facts in accordance with its own view of the preponderance of the evidence. *Marlow v. Marlow,* 284 S. C. 155, 325 S. E. (2d) 703 (Ct. App. 1984).

As we noted above, Article IX of the partnership agreement states that a "partner's interest in cash basis capital, less accounts payable and accrued expenses allocable to his interest, shall be paid" to the partner upon his withdrawal from the partnership.

No provision of the partnership agreement makes specific reference to First Magnolia and Management Design. Throughout the time the partnership has held its interests in First Magnolia and Management Design, however, it has reflected, without any apparent objection from Moise and Humphries, the value of each asset on its books according to the asset's book value rather than its fair market value. At trial, no one disputed that "book value" is ordinarily employed to figure the value of "cash basis capital."

Even though the partnership agreement does not specifically address the partnership's interests in First Magnolia and Management Design, these assets, nevertheless, are assets of the partnership. *See* Code of Laws of South Carolina § 33-41-230 (1976).[1] Nothing in the record indicates they are not so.

As partnership assets, the share in First Magnolia and the Management Design stock should be valued in the same manner as other partnership assets unless the contrary intention appears. An intention to value these assets differently has not been shown.

Humphries contends, however, the Partners orally agreed to treat its interests in First Magnolia and Management Design "separately" from other partnership assets. The trial court made no finding that the Partners reached an agreement of this kind. We find they made no such agreement, although one was discussed when the parties made an attempt to settle the differences that arose between them after Moise and Humphries withdrew from the partnership.

We therefore hold the partnership's share in First Magnolia and its stock in Management Development upon Moise's

---

[1] S. C. Code of Laws § 33-41-230 (1976) provides in part:
(1) All property originally brought into the partnership stock or subsequently acquired by purchase or otherwise, on account of the partnership, is partnership property.
(2) Unless the contrary intention appears property acquired with partnership funds is partnership property.

and Humphries' withdrawal from the partnership should have been valued on the same basis as every other partnership asset, *i.e.*, on the basis of its book value.

Accordingly, we reverse the judgments of the trial court and remand for further proceedings consistent with this opinion.

Reversed and remanded.

SHAW and HOWELL, JJ., concur.