892 F.2d 74
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
INTERNATIONAL PAPER COMPANY; Industrial Risk Insurers,
Inc., Plaintiffs-Appellants,
v.
CENTURY CONTRACTORS, INC.; Commercial Union Insurance
Company, Defendants-Appellees.
 No. 89-2334.
 United States Court of Appeals, Fourth Circuit.
 Argued: Oct. 5, 1989.
Decided: Dec. 11, 1989.
 
 A. James Anderson, Jr. (William H. Stanhope, Robins, Kaplan, Miller & Ciresi; Wade H. Logan, Holmes & Thompson, on brief), for appellants.
 Ronald B. Hamilton (Denise Brinker Bense, Cozen and O'Connor, on brief); John L. Choate (R. Bruce Shaw, Charles M. Black, Jr., Nelson, Mullins, Riley & Scarborough; Kenneth L. Salmon, Katarincic, Salmon & Steele; Henry B. Smythe, Jr., Buist, Moore, Smythe & McGee, on brief), for appellees.
 Before ERVIN, Chief Judge, SPROUSE, Circuit Judge, and JOHN A. MACKENZIE, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 The controversy underlying this appeal was sparked by a multimillion dollar fire at a construction site. The property owner, International Paper Company (IPCO), and its property insurance carrier, Industrial Risk Insurance (IRI), here challenge the district court's dismissal of their action against a contractor, Century Contractors (Century), and its liability insurer, Commercial Union Insurance Company (Commercial Union). The court below held that IPCO and IRI could not recover because IPCO had contractually assumed the risk of fire loss. We affirm.
 
 
 2
 In August 1983, IPCO was in the midst of a $600,000,000 reconfiguration and renovation of its mill and warehouse facility in Georgetown, South Carolina. As part of this plan, IPCO contracted with Century for a $412,000 project--the partial replacement of the roof on a building known as the Old Warehouse. The contract provided that IPCO would furnish "Owner[']s Controlled Insurance" coverage. To that end, IPCO purchased an umbrella policy from Commercial Union, providing liability insurance for itself and for contractors, including Century, involved in the mill reconfiguration job.[1] The contract also provided, in Article 9, paragraph 5, that IPCO would assume the risk of loss by fire. IPCO continued to maintain with IRI a separate property insurance policy which, among other things, covered fire damage.
 
 
 3
 On November 30, 1983, a fire broke out as Century workers used cutting torches to remove a debris chute at the site. IPCO reported a $19,257,139 loss, including lost production time as well as damage to the mill, machinery and equipment, finished goods,[2] and personal property. Commercial Union declined to pay the claim; IRI paid $18,731,141.
 
 
 4
 IPCO and IRI as insurer-subrogee subsequently filed this action against Century and Commercial Union. They asserted four theories of recovery against Century: (1) negligence; (2) breach of contract; (3) engagement in ultrahazardous activity; and (4) breach of express and implied warranties. They also asserted a fifth claim directly against Commercial Union, contending that it had breached its contract to reimburse IPCO and IRI. In response, Commercial Union filed a motion to dismiss for failure to state a claim on which relief can be granted. Fed.R.Civ.P. 12(b)(6). Century filed a motion for summary judgment. Both contended that, in its contract with Century, IPCO had assumed the risk of loss by fire and thereby had waived any right to recover for fire damage. The district court agreed that IPCO could not recover and granted Commercial Union's motion to dismiss, also granting by implication Century's motion for summary judgment. IPCO and IRI appeal.
 
 
 5
 The issue we resolve concerns the relationship between the construction contract provision whereby IPCO assumed the risk of loss by fire and other provisions of the construction contract which IPCO[3] claims placed the risk of negligently-caused fires on Century, so that damage from such fires would be covered by the umbrella insurance policy issued by Commercial Union. IPCO contended below and contends here that, construed together, Article 7 and Article 9, paragraphs 1, 3, and 5 reflect the parties' intention to place the risk of the Old Warehouse fire loss on Century. Article 7 provides:
 
 
 6
 Costs Due to Negligence: Any costs due to negligence of Contractor or anyone directly employed by it, either for the making good of defective work, disposal of material wrongfully supplied, making good of damage to property or excess costs for labor or otherwise, shall be borne by Contractor and Owner may withhold money due Contractor to cover any such costs already paid by it.
 
 
 7
 By Article 9, paragraph 1, the parties agreed that IPCO would furnish and pay the premiums under an "Owner[']s Controlled Insurance" program of liability insurance. Article 9, paragraph 3 states:
 
 
 8
 Protection of Work and Property. Contractor shall continuously maintain adequate protection of all his work and all work of his subcontractors from damage and shall protect Owner's property from injury or loss arising in connection with this Agreement. He shall do whatever is reasonably necessary to protect adjacent or neighboring property.
 
 Article 9, paragraph 5 provides:
 
 9
 Fire Risk. Owner shall assume such risk of loss to property of Owner, Contractor and any subcontractor as normally insured by insurance policies of the type usually issued by Factory Insurance Association providing coverage against the perils of fire, lightning and extended coverage. Owner's liability shall be limited to all work in place and all material and equipment not in place stored on the building site and intended for permanent use therein. Owner shall not be responsible for, and assumes no liability for, any damage however caused to any sheds, equipment, machinery, materials, tools, supplies or personal effects belonging to or rented by Contractor, any subcontractor, or employees of either, the capital value of which is not included in the cost of the Project.
 
 
 10
 In analyzing the disputed IPCO-Century contract, the district court reasoned that Article 7 concerned Century's obligation to remedy work defects arising from its negligence, the sort of costs beyond the purview of insurance coverage, while paragraph 5 of Article 9 concerned only loss by fire, including fires accidentally caused by the negligence of Century. The district court concluded that the articles addressed distinctly different concerns, stating in part:
 
 
 11
 The court finds no ambiguity in the contract; the intent of the parties being entirely clear from the written documents. The contract clearly shows that the parties contemplated that International Paper would assume the risk of loss to its property against the perils of fire.... In effect, plaintiffs argue that paragraph 5, Article 9, which reads in terms of assumption of risk, was really intended to be a statement that International Paper assumes only those risks for which Century was not responsible. Such an interpretation of the contract clearly would be absurd.
 
 
 12
 It is clear that Article 7 deals with the costs incurred as a result of the negligence of Century in performing its work on the project, resulting in the work having to be redone.... The costs related to "making good of defective work" obviously refers to Century's defective workmanship on the project and the costs of making up for any deficiency in Century's work....
 
 
 13
 When read in this fashion, it is clear that Article 7 addresses concerns not touched by paragraph 5 of Article 9. Paragraph 5 of Article 9 addresses International Paper's assumption of the risk of damage to its property against the perils of fire.... Article 7 protects International Paper from damage for which it was not protected by its policy with IRI and is entirely consistent with paragraph 5 of Article 9.
 
 
 14
 ... Paragraph 5 of Article 9 clearly states that the owner (International Paper) shall assume the risk of loss to the property caused by fire. The Article does not limit the risk to accidental fires or exclude fire losses caused by the negligence of Century. It seems clear that Article 9 mirrors the parties['] intent to provide mutual exculpation from losses caused by fire and their agreement to look solely to insurance in the event of a fire loss and not to recovery from the other party. This result is consistent with the obvious intent of the parties to distribute the different risks.
 
 
 15
 In this appeal, IPCO and IRI argue primarily that the district court erred in construing the contract as containing a waiver of IPCO's right to recover against Century for fire loss. Alternatively, they argue that the contract is ambiguous and that the intent of the parties must be determined by a jury. We agree with the district court, however, that the contract was unambiguous and that its interpretation therefore presented a question of law for the court. See Garrett v. Pilot Life Ins. Co., 241 S.C. 299, 128 S.E.2d 171, 174 (S.C.1962); Gamble, Givens & Moody v. Moise, 288 S.C. 210, 341 S.E.2d 147, 150 (S.C.Ct.App.1986).[4] We also agree with the reasoning of the court, expressed in the language quoted above, and its conclusion that IPCO contractually assumed the risk of loss to the property caused by fire.[5]
 
 
 16
 IPCO suggests that this result contravenes South Carolina law, which does not favor contract provisions relieving a party of liability for its own negligence. But the South Carolina Supreme Court has stated that such provisions may be valid "when no considerations of public policy ... would override the fundamental right of freedom of contract." Pride v. Southern Bell Tel. & Tel. Co., 244 S.C. 615, 138 S.E.2d 155, 157 (S.C.1964). Here, the parties expressly allocated the foreseeable risks of the construction project, an arrangement which we think is permissible under South Carolina contract law. See 2000 Watermark Ass'n v. Celotex Corp., 784 F.2d 1183, 1185 (4th Cir.1986) (applying South Carolina law); South Carolina Elec. & Gas Co. v. Combustion Eng'g, 283 S.C. 182, 322 S.E.2d 453, 459 (S.C.Ct.App.1984).
 
 
 17
 Because the contract unambiguously placed the risk of fire loss on IPCO, IPCO "can prove no set of facts ... which would entitle [it] to relief." Conley v. Gibson, 355 U.S. 41, 46 (1957). The judgment of the district court dismissing IPCO's complaint pursuant to Fed.R.Civ.P. 12(b)(6) is therefore
 
 
 18
 AFFIRMED.
 
 
 
 [1]
 This approach was apparently part of an effort by IPCO to control costs on the massive reconfiguration project. Instead of having contractors provide their own liability insurance, the cost of which would be passed along to IPCO through bid prices, IPCO asked the contractors to bid for jobs without including insurance. IPCO then obtained an umbrella policy through Commercial Union to provide liability coverage for the contractors and itself
 
 
 [2]
 The Old Warehouse was filled with large rolls of finished paper products
 
 
 [3]
 Hereafter, IPCO will refer to appellants IPCO and IRI
 
 
 [4]
 Compare Wolman v. Tose, 467 F.2d 29 (4th Cir.1972), which held disposal of a contractual dispute on a 12(b)(6) motion was error where construction posed a question of fact
 
 
 [5]
 The Article 9, paragraph 1 requirement that IPCO furnish "Owner[']s Controlled Insurance" is not inconsistent with this analysis