2370

Charles L. JOHNSON, Respondent/Appellant v. PARAPLANE CORPORA-TION, Carolina Para-Flight, Inc., Stephen L. Snyder, Rick Rogers, and Mike Westdyke, Defendants, of whom Paraplane Corporation and Stephen L. Snyder, are, Appellants/Respondents.

(460 S.E. (2d) 398)

Court of Appeals

248

*John C. Thompson*, of *Thompson, Henry, Gwin, Brittain & Stevens*, Conway, *for appellants/respondents*.

*Jack M. Scoville, Jr.; William Stuart Duncan* and *Michael K. Kendree*, Georgetown, *for respondent/appellant*.

Heard Apr. 4, 1995.

Decided July 3, 1995; Reh. Den. Aug. 23, 1995.

CONNOR, Judge:

Charles L. Johnson instituted this action against Paraplane Corporation (Paraplane), Carolina Para-Flight, Inc., Stephen L. Snyder, Rick Rogers, and Mike Westdyke, seeking damages for injuries incurred when he struck a tree while operating a paraplane[1] manufactured by Paraplane.[2] The trial court

---

[1] As described in Johnson's appellant's brief,

Paraplane is the trademark name of the motorized, flexible wing, three (3) wheel, ultralight aircraft used in the flight class instructed by . . . Carolina Para-flight, Inc., during the summer of 1991. The ultralight is a motorized craft propelled by two (2) Fifty and one-half (50.5") inch counter-rotating blades attached to the rear of the pilot's cockpit seat. A parachute canopy, which acts as the flexible wing, attaches to the craft by nylon suspension lines. The increasing speed of propeller rotation and the forward movement of the craft forces air into the canopy, inflates the flexible wing, and provides lift for the ultralight.

[2] The complaint contains four causes of action:

1) negligence by Paraplane Corporation and Stephen L. Snyder, its principal shareholder and president; 2) negligence by Carolina Para-Flight,

denied Paraplane's motion for summary judgment on Johnson's claim for negligent design and ordered the parties to arbitrate pursuant to an arbitration clause in the waiver and release agreement signed by Johnson. Paraplane appeals, arguing the trial court lacked jurisdiction to hear the matter because of a forum selection clause in the waiver. Johnson appeals only the order to arbitrate. We affirm in part and reverse in part.

On April 7, 1991, Johnson, a chiropractor, rented a paraplane from Carolina Para-Flight, Inc., in Horry County. The first time he flew the paraplane, Johnson crashed into a tree and broke his leg. Prior to the flight, Johnson signed a waiver and release agreement. He also viewed a video which explained the waiver in great detail.

## I. *Jurisdiction*

Paraplane argues the trial court lacked jurisdiction of this matter because the waiver agreement provides:

"It is further specifically agreed that venue and jurisdiction for any legal action arising out of any matter which is the subject of this document shall be in the Superior Court of the State of New Jersey, County of Camden." However, S.C. Code Ann. § 15-7-120 (Supp. 1994) states in part:

(A) Notwithstanding a provision in a contract requiring a cause of action arising under it to be brought in a location other than as provided in this title and the South Carolina Rules of Civil Procedure for a similar cause of action, the cause of action alternatively may be brought in the manner provided in this title and the South Carolina Rules of Civil Procedure for such causes of action.

(B) A provision in an arbitration agreement that arbitration proceedings must be held outside this State is not en-

---

Inc., and its owners, Rick Rogers and Mike Westdyke; 3) strict liability against Paraplane; and 4) breach of warranty against Paraplane. The trial judge granted summary judgment as to all causes of actions except "[s]o much of the First Cause of Action which alleges negligent design against the defendants Paraplane Corporation and Stephen L. Snyder," and "[s]o much of the Second Cause of Action which alleges willfulness against the defendants Carolina Para-Flight, Inc., Rick Rogers, and Mike Westdyke." Only the first of these holdings (denial of Paraplane and Suyder's motion for summary judgment concerning negligent design) is before us.

forceable with respect to a cause of action, which, but for the arbitration agreement, is triable in the courts of this State. The enforceability of the remaining provisions of the arbitration agreement and the method of selecting a forum for the conduct of the arbitration proceedings is as provided in this title, the Federal Arbitration Act, and any applicable rules of arbitration.

Paraplane argues this statute applies only to venue, and not to jurisdiction. In construing a statute, its words must be given their plain and ordinary meaning. *Parsons v. Uniroyal-Goodrich Tire Corp.*, 313 S.C. 394, 438 S.E. (2d) 238 (1993). Although this statute is in the venue chapter of the code, and the title of the statute refers to venue, the text of the statute contains no limitation to venue. Subsection (B) specifically refers to arbitration agreements that provide the proceedings must be held outside of South Carolina. Furthermore, even though the title and headings are part of a statute, they may not be construed to limit the plain meaning of the text. *Garner v. Houck*, 312 S.C. 481, 435 S.E. (2d) 847 (1993). *See also* S.C. Code Ann. § 2-13-175 (Supp. 1994) which states:

> The catch line heading or caption which immediately follows the section number of any section of the Code of Laws must not be deemed to be part of the section and must not be used to construe the section more broadly or narrowly than the text of the section would indicate. The catch line or caption is not part of the law and is merely inserted for purposes of convenience to the person using the Code.

Absent the contract provision, this action was properly brought in Horry County. Thus, it may be brought there under S.C. Code Ann. § 15-7-120(A) (Supp. 1994).

### II. *Denial of Paraplane's Motion for Summary Judgment*

Paraplane argues the trial court erred in denying its summary judgment motion concerning Johnson's claim for negligent design based on the waiver agreement and assumption of the risk. Ordinarily, the denial of summary

judgment is not directly appealable. *Ballenger v. Bowen*, 313 S.C. 476, 443 S.E. (2d) 379 (1994). However, "an order that is not directly appealable will nonetheless be considered if there is an appealable issue before the Court and a ruling on the appeal will avoid unnecessary litigation." *Hite v. Thomas & Howard Co. of Florence*, 305 S.C. 358, 360, 409 S.E. (2d) 340, 341 (1991).

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *Cafe Assocs., Ltd. v. Gern-gross*, 305 S.C. 6, 406 S.E. (2d) 162 (1991). In ruling on a motion for summary judgment, the evidence and the inferences which can be drawn therefrom should be viewed in the light most favorable to the nonmoving party. *Id.*

The waiver agreement which Johnson signed in this case provides in pertinent part:

2. I hereby forever RELEASE AND DISCHARGE [CJ][3] Paraplane® Corporation, its directors, agents, employees, instructors, pilots, and dealers; all powered parachute instructors, advisors and ground personnel, the owners of the aircraft and land utilized for Powered Parachute Flights Activities, their agents, employees and servants, (hereinafter collectively referred to as "Released Parties") from any and all liabilities, claims, demands or causes of action that I may hereafter have for injuries and damages arising out of my participation in Powered Parachute Flight Activities, including, but not limited to, losses CAUSED BY THE PASSIVE OR ACTIVE NEGLIGENCE OF THE RELEASED PARTIES [CJ] or hidden, latent, or obvious defects at the Flight Center or in the equipment used.

. . . . .

4. I further agree that I WILL SUE OR MAKE A CLAIM against the Released Parties for damages or other losses sustained as a result of my participation in Powered Parachute Flight Activities [CJ]. I also agree to

---

[3]The brackets "[CJ]" indicate places Johnson initialed specific provisions of the waiver form.

INDEMNIFY AND HOLD THE RELEASED PAR-
TIES HARMLESS from all claims, judgements and costs
including attorney's fees, incurred in connection with any
action brought as a result of my participation in Powered
Parachute Flight Activities including but not limited to
losses CAUSED BY THE PASSIVE OR ACTIVE NEG-
LIGENCE OF THE RELEASED PARTIES; <u>or hidden,
latent, or obvious defects at the Powered Parachute
Flight Center or in the equipment or aircraft used.</u>

. . . . .

7. I understand that because of the unavoidable and un-
precedented dangers involved in Powered Parachute
Flight Activities, the released parties are making no war-
ranty of any kind, express or implied, concerning any and
all equipment, aircraft, or facilities provided by the RE-
LEASED parties. <u>Powered Parachute Flight Activities
can be a dangerous sport and associated equipment such
as PARACHUTES AND ENGINES DO NOT ALWAYS
WORK the way they are expected to function.</u> [CJ]
I understand that the Powered Parachutes provided by
the released parties are <u>provided without any warranty
that they are fit to use for any purpose whatsoever. They
are provided without any warranty of merchantability or
airworthiness.</u> The approval for use of any equipment by
the release[d] parties is *not a warranty that the equip-
ment is suitable for any purpose,* but merely an opinion. I
understand these disclaimers and I accept them. [CJ]

. . . . .

12. As part of the consideration for my being allowed to
utilize the facilities of the flight under [sic] and to partici-
pate in Powered Parachute Flights Activities, <u>I
PROMISE NOT TO SUE</u> [CJ] <u>any of the released parties
for any cause of action whatsoever.</u> . . .

. . . . .

18. I agree that POWERED PARACHUTE FLIGHT
ACTIVITIES are of little value to the public and no one
has to engage in them. [CJ]

. . . . .

.

20. I understand that Powered Parachute Flights involve TRAVEL IN THREE DIMENSIONS and such activity IS SUBJECT TO MISHAPS, INJURY OR POSSIBLY EVEN DEATH; therefore I again reaffirm my voluntary assumption of all of the risks of engaging in Powered Parachute Flight Activities and I again forever release and discharge, insofar as it is possible to do so under the law, the released parties in this agreement from any duty of care whatsoever to me. [CJ]

(Underscored emphasis added.)

Johnson also viewed a Waiver and Training video which explained various provisions of the waiver agreement. The narrator on the video stated:

You are going to be signing a document that shifts the risks associated with your operation of a powered parachute. It shifts the risks to you. If you are injured or killed while participating in powered parachute flying this could be the most important document you have ever signed during your lifetime. So it is essential for your own safety and welfare and that of your family that you read and carefully understand it before you sign it.

This document is a contract and like all contracts it is enforceable in a court of law.

.    .    .    .    .

*The intent of this document is to release all persons providing you equipment, training, services or facilities for powered parachute flying.*

.    .    .    .    .

In paragraph two we speak of passive or active negligence and that simply means that if we forget to do something, that's passive negligence. If we do something foolish, careless, or even stupid that's active negligence. But in either events, you have released us from any liability to you as a result of that.

In paragraph three we go on to explain that this release is intended *to be as complete and comprehensive of a release as it is possible to make under the law.* It dis-

> charges all parties from any duty of care whatsoever to you insofar as it's possible to do that under the law.
>
> Now, there's a subtle and important point in this contract. Not only are you releasing us from liability to you but you're releasing us from any duty of case to you and this is put in specifically to provide a complete defense against a wrongful death action that your heirs might otherwise have had if you are seriously injured or killed. *Now, you notice this discharge is as complete as it's possible to do under the law.*

(Emphasis added.)

The waiver covers "hidden, latent, or obvious defects" in the equipment. Design defects are one type of defect, whether they are hidden, latent, or obvious. Accordingly, defects arising from the negligent design of the equipment clearly come within this exclusion, as would design defects based on strict liability or warranty theories. *Cf. Madden v. Cox*, 284 S.C. 574, 328 S.E. (2d) 108 (Ct. App. 1985) (holding design defects may be based on negligence, strict torts, or warranty). In *South Carolina Electric & Gas Co. v. Combustion Engineering, Inc.*, 283 S.C. 182, 322 S.E. (2d) 453 (Ct. App. 1984). Combustion sought to enforce an exculpatory clause that included the phrase "arising out of the *manufacture*, sale, delivery, use, or resale" of the equipment. We held the term manufacture was not synonymous with the word "design" and, therefore, the exculpatory clause did not shield Combustion from liability for negligent design. We noted in *Combustion Engineering* that exculpatory phrases are to be strictly construed against the party seeking enforcement. In the case before us we have an exculpatory clause that necessarily encompasses negligent design because it covers all types of hidden, latent, or obvious defects. When we strictly construe the waiver, this conclusion is nevertheless inescapable. Even though the waiver does not use the specific phrase "negligent design," Johnson's negligent design allegations come within the scope of the waiver.

Summary judgment should be granted where parties engaging in voluntary recreational activities of a hazardous nature execute a release. *Huckaby v. Confederate Motor Speedway*, 276 S.C. 629, 281 S.E. (2d) 223 (1981). In

*Huckaby*, the Supreme Court, in finding a race car driver who signed a waiver before entering a racetrack was barred from bringing an action for negligent installation and maintenance of a guard rail, stated:

> It should be noted that participation in automobile races and other sporting events is a voluntary undertaking. If a prospective participant wishes to place himself in the competition sufficiently to *voluntarily agree* that he will not hold the organizer or sponsor of the event liable for his injuries, the courts should enforce such an agreement. If these agreements, voluntarily entered into, were not upheld, the effect would be to increase the liability of those organizing or sponsoring such events to such an extent that no one would be willing to undertake to sponsor a sporting event. Clearly, this would not be in the public interest.

*Id.* at 631, 281 S.E. (2d) at 224 (quoting *Gore v. Tri-County Raceway, Inc.*, 407 F. Supp. 489, 492 (M.D. Ala. 1974)).

Moreover, as noted by the trial judge, where a party seeks to assert an exculpatory clause and the language is unambiguous, courts should not " 'override the fundamental right of freedom of contract.' " *South Carolina Electric & Gas Co. v. Combustion Eng'g, Inc.*, 283 S.C. 182, 191, 322 S.E. (2d) 453, 459 (Ct. App. 1984) (citation omitted); *see also Huckaby v. Confederate Motor Speedway*, 276 S.C. 629, 630, 281 S.E. (2d) 223, 224 (1981) ("Although exculpatory contracts are not favored by the courts, as they usually tend to induce a want of care, we have upheld them in some instances recognizing people should be free to contract as they choose.").

The trial judge erred by not granting complete summary judgment to Paraplane Corporation and Stephen L. Snyder. Because of our ruling on this issue, all remaining issues on appeal and cross-appeal are now moot and we do not address them.

Therefore, the decision of the trial court is

Affirmed in part and reversed in part.

SHAW and CURETON, JJ., concur.