## 16473

### PARKS v. LYONS ET AL.
(64 S. E. (2d) 123)

*Messrs. Leatherwood, Walker & Mann,* of Greenville,
*for Appellants,*

*Messrs. Price & Poag,* of Greenville, and *Arnold R. Merchant,* of Spartanburg, *for Respondents,*

*Messrs. Leatherwood, Walker & Mann,* of Greenville, *for Appellant, in reply,*

March 12, 1951.

L. D. LIDE, Acting Associate Justice.

This action at law was commenced in the Greenville County Court on or about May 12, 1949, for the recovery of damages, both actual and punitive, for the alleged unlawful breach of a written option for the sale of a certain tract of land in Greenville County, by the defendants to the plaintiff; and in due time the cause came on for trial before Hon. W. B. McGowan, County Judge, and a jury, resulting in a nonsuit, which was granted at the close of the evidence in

behalf of the plaintiff upon motion of the defendants. From this order of nonsuit and the judgment entered thereon the plaintiff appeals.

The defendants in the cause, who are the respondents here, are Perry S. Lyons, his wife, Blanche E. Lyons, and G. J. Lyons, and his wife, Mildred C. Lyons. The defendants Perry S. Lyons and G. J. Lyons are uncles of the plaintiff, Charles E. Parks, that is to say, they are brothers of his mother. Their wives were joined solely because of their inchoate dower rights in the land involved in this suit. They will not be specifically referred to herein, and where reference is made to the defendants or the respondents, this will be understood to mean Perry S. Lyons and G. J. Lyons only.

On October 17, 1947, these defendants executed and delivered to the plaintiff a written option for the puchase of a certain tract of land situate in Greenville County and owned by them, described in the complaint herein as containing 96.82 acres, at and for the sum of $6,000; and it was provided therein that the option "shall remain irrevocable until November 15, 1947, and shall remain in force thereafter until one year from the date hereof unless earlier terminated by the seller". And it is specifically provided that the seller may terminate the same "at any time after the 15th day of November, 1947, by giving to the buyer ten days written notice of intention to terminate at the address of the buyer". At the time this option was executed and delivered the plaintiff, Charles E. Parks, was a minor, and he did not become of age until October, 1948. The plaintiff had lived with his father and mother, Mr. and Mrs. Vernon E. Parks, on the land in question for a number of years, and the plaintiff refers to himself in his testimony as having occupied the land as "a tenant sharecropper".

The plaintiff entered into the military service of his country, and it was after his discharge that the option was executed; The plaintiff having originally expected to procure the necessary funds, in order to exercise the option,

from an agency of the United States Government, referred to in the record as "U. S. Farmers Home Administration". Consequently in January, 1948, it was apparently expected by all parties concerned that the loan would be procured and the tranaction consummated. In fact, it appears from the evidence that the necessary papers were actually signed, but of course not delivered. But it was then discovered for the first time by the attorneys handling the matter that the plaintiff, Charles E. Parks, was a minor, and on account of this circumstance the proposed loan was not available.

Some time after this unavoidably futile transaction the defendants in the exercise of the right reserved to them in the option gave due written notice on May 10, 1948, to the effect that they were cancelling the option "on and after the 25th day of May 1948". And it appears from the evidence that after the receipt of this cancellation notice, allowing fifteen days instead of ten days as specified in the written option, the plaintiff, acting with the assistance and counsel of his parents, especially his father, entered into negotiations with a Mr. W. C. Cook to procure the loan of the purchase money, so as to enable the plaintiff to accept and comply with the option; and Mr. Cook, evidently on the basis of land values, expressed his willingness to make the loan, if it were approved by his counsel, to wit, James M. Richardson, Esq., of the Greenville Bar; and Mr. Richardson testified in the cause to the effect that he informed the plaintiff's father that he thought the loan could be made if a proceeding were brought to authorize it by the Court, but that he did not "hear further from him until a little bit ago". Mr. Richardson further said: "My recollection is it was a speedy demand and I told him I would have to have all the information; otherwise, forget about it."

Mr. Richardson also testified that while he could not guarantee that the Court would authorize the transaction, he told the plaintiff's father that he thought the Court would do so.

The following additional brief excerpts from Mr. Richardson's testimony are quoted:

"Q. You would have to go and have a suit filed and served and have a reference and testimony taken and leave it up to the Judge? A. Yes, sir.

"Q. That conversation was with the boy's father? A. With his father and some gentleman he had with him.

"Q. I believe you said they told you they only had three or four or five days? A. No, sir; I told him I would have to have all the information two or three days ahead of time.

"Q. And they didn't come back? A. No, sir."

Mr. Richardson does not give the date of this conference. Manifestly, however, it occurred some time after the cancellation notice of May 10, 1948, and before May 25, 1948.

The plaintiff, Charles E. Parks, testified to the effect that a day or two after he got the letter of May 10th he went to see Mr. Cook with reference to the proposed loan, and that on a "Monday morning", presumably on May 17, 1948 (eight days before the expiration of the option), he and his mother called on the defendant G. J. Lyons with reference to exercising the option, and that they informed him that the money was "available", but he said "he wouldn't take no damn man's six thousand dollars for it", meaning of course the land in question; and there was some other testimony corroborating the making of such a statement.

The record also shows two letters from the defendants dated May 19, 1948, one directed to Vernon E. Parks and Charles E. Parks to the effect that rumors that the farm in question had been sold to any person or persons were not true, and that they were not negotiating with anyone for the sale of the same "at any price or figure". The other letter was addressed to Vernon Parks only, and it contained a request that itemized bills be presented as to how much was due by them for repairs to the house on the premises in question and the materials used; and that the same be pre-

sented not later than May 25, 1948, when these matters would be settled.

It appears that nothing further was done with reference to the acceptance of, or compliance with, the option on the part of the plaintiff; and it is admitted that the property in question was some months thereafter sold and conveyed to other parties at and for the sum of $9,000.00.

As hereinbefore stated, at the close of all the testimony in behalf of the plaintiff, the defendants moved for a non-suit, and their motion was granted by Judge McGowan, who stated his reasons extemporaneously, but with due clarity, from which we quote the following: "Upon the repudiation of the option, contract, by the defendants, that did relieve the plaintiff of the duty of making a tender, that is, an actual tender of the money. But did not relieve the plaintiff of making a showing that he was willing and able to comply and furnish the agreed purchase price had the defendants been agreeable and willing to accept the same. The plaintiff must still carry that burden."

Judge McGowan also said that there was no necessary showing that the Court would have authorized the loan within the time set, May 25, 1948; and that there was no showing (quoting) "that the matter could have been con-summated and concluded by that time, even if the Court had placed its stamp of approval on the loan"; and hence there was no showing that the plaintiff (quoting) "was willing, able and ready to comply with the contract on or before the 25th day of May, 1948, had the defendants been willing to carry out the obligation of the option".

Counsel for the appellant filed two exceptions only to Judge McGowan's order of nonsuit, which may be briefly stated as being to the effect (1) that he erred in holding that the testimony did not show that the appellant, by means of the proposed loan, was in position to comply with the option by May 25, 1948; and (2) that he also erred in holding as

a matter of law that it was incumbent upon appellant to show that the loan could have been consummated, and that the option could have been complied with, by May 25, 1948, since the respondents "had no intention of complying with said option".

Referring to the first point, we are of course in accord with counsel for the plaintiff to the effect that the evidence should be construed most favorably to him, upon a motion for a nonsuit; and this would include consideration of the true intent and meaning of the statements said to have been made by the defendant G. J. Lyons, tending to repudiate the written option, in connection with the letters of May 19, 1948, indicating that the continuance of the option through May 25, 1948, was recognized. Judge McGowan evidently considered the evidence in accordance with this established rule, and upon this basis his conclusion is sound, to wit, that while the plaintiff was excused by such "repudiation" from making a formal tender of the money, he could not escape the burden of showing that on or before May 25, 1948, he was not only willing, but *able and ready* to comply with the terms of the option. And the only reasonable inference that can be drawn from the evidence, in our opinion, is that the plaintiff wholly failed to show, and that he was unable to show, that he was able and ready to comply with the option.

In considering the legal question, raised by point (2) it should first be borne in mind that the written instrument executed by the defendants on October 17, 1947, was not a bilateral contract, but was a continuing offer, a mere option, and imposed no obligation whatsoever upon the plaintiff as the optionee. Indeed, it does not appear that there is any evidence in the record of a *contract* between the defendants and the plaintiff, binding upon them respectively, until a very few days before May 25, 1948. Liberally construing the testimony, it may be said to show that there was an *acceptance* of the continuing offer when the plaintiff in-

formed the defendants, in substance, that he intended to comply with the option.

It should further be stated that the option in question, like most options, is specific in the matter of time, and time was plainly of its essence. *Hutto v. Wiggins,* 175 S. C. 202, 178 S. E. 869. Moreover, the plaintiff here had the benefit of this continuing option for a period of slightly more than seven months.

The contract, so far as the plaintiff was concerned, since he was a minor, was *voidable* at his election, although it was fully binding upon the defendants, who were *sui juris.* In the case of *Hammassapoulo v. Hammassapoulo,* 134 S. C. 54, 131 S. E. 319, 320, it was quite correctly held: "Contracts made by a minor are merely voidable. *Holmes v. Rice,* 45 Mich. 142, 7 N. W. 772. But the contract cannot be avoided by an adult with whom the minor deals." Moreover, the law is aptly and tersely stated in 27 Am. Jur. 753, as follows: "An infant who asserts contractual rights is bound by reciprocal obligations."

It is an elementary principle that one who seeks to recover damages for the breach of a contract, to which he was a party, must show that the contract has been performed on his part, or at least that he was at the appropriate time able, ready and willing so to perform it. And we think this principle is peculiarly applicable where the party seeking redress was himself a minor, and therefore the contract was voidable on his part at his election.

Counsel for the plaintiff, however, in support of their position that it was not necessary for him to show that he was able and ready, as well as willing, to comply with the contract on his part on or before May 25, 1948, cite the English case of *Hochster v. De La Tour,* Queen's Bench, 1853, 2 E & B 678. But we do not think the cited case is at all applicable, for that was a suit brought by an employee against an employer for damages for breach of the contract

of employment, and it appeared that the employer renounced it, although the employee was "ready and willing to perform it, till it was broken and renounced" by the employer; hence the English Court reached the very reasonable conclusion that the plaintiff would not have been justified in remaining idle, but that after the breach by the employer he was at liberty to seek other service under another employer, "which would go in mitigation of the damages to which he would otherwise be entitled for a breach of the contract."

But the Kentucky case of *Harmon v. Thompson*, 119 Ky. 528, 84 S. W. 569, 573, seems very much in point here, although in that case the suit was brought by the *vendor* against the *vendees* to recover damages for their default in failing to take the property, and the Court of Appeals of Kentucky in their opinion said: "That appellee was able and willing and ready to convey the title as agreed on January 1, 1891, was a necessary allegation, *because it was an essential fact.* For, although his vendees were in default in failing to take the property, yet, to entitle him to recover damages, he must have owned the property, and have been in position to have complied with his contract according to its terms." (Emphasis added.)

In the case at bar, not only did the plaintiff fail to establish that he was able and ready to comply with the contract on his part, but the testimony given by him and in his behalf is affirmatively to the contrary. Consequently, if the plaintiff were to recover damages, the result would be essentially unjust and hence the order of nonsuit was correct.

Our conclusion, as already indicated, is that both of the exceptions in behalf of the appellant should be, and they are hereby, overruled.

Counsel for the respondents gave notice of an additional ground to sustain the order of nonsuit, but the point therein stated was not considered or passed upon in the Court below;

and having overruled the exceptions of the appellant, we do not deem it necessary or appropriate to consider the sustaining ground.

The judgment of the County Court is affirmed.

FISHBURNE, STUKES, TAYLOR and OXNER, JJ., concur.