THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE 
 CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 
 239(d)(2), SCACR. 
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 

 
 
 Charles W. King, Plaintiff,
 v.
 Island Club Apartments, a
 South Carolina Limited Partnership, and Finlay Properties, Inc., its
 general partner, Defendants,
 
 Island Club Apartments, a South Carolina Limited Partnership, and Finlay 
 Properties, Inc., its general partner, Third-Party Plaintiffs,
 v.
 Mark du Mas and The Paces Foundation, Inc., a Georgia Corporation, Third-Party 
 Defendants, Of Whom Island Club Apartments, a South Carolina Limited Partnership, 
 and Finlay Properties, its general partner, are,
 
 
 Appellants,
 
 
 
 
 And Mark du Mas and The Paces Foundation, Inc., a Georgia Corporation, 
 are,
 
 
 Respondents.
 
 

 

Appeal From Beaufort County
Thomas Kemmerlin, Special Circuit Court 
 Judge

Unpublished Opinion No.  2005-UP-107
Heard January 10, 2005  Filed February 
 10, 2005

AFFIRMED

 
 
 
Stephen A. Husman and Vernon F. Dunbar, of Columbia, for Appellants.
Gregory F. Harley and Marvin H. Dukes, III, of Beaufort, for Respondents.
 
 
 

PER CURIAM: Island Club Apartments, a South 
 Carolina Limited Partnership, and Finlay Properties, Inc., its general partner 
 (collectively Island Club), filed a third-party complaint against Mark du Mas 
 and The Paces Foundation, Inc. (collectively du Mas), alleging du Mas: intentionally 
 interfered with the contractual relationship between Island Club and Charles 
 King, intentionally interfered with Island Clubs prospective relationships 
 regarding future development and construction contracts, and engaged in a civil 
 conspiracy to extort an ownership interest in Island Clubs project.  Island 
 Club appeals from the trial courts grant of summary judgment in favor of du 
 Mas on all claims.  We affirm.
FACTS
King and Island Club entered into a contract 
 on April 22, 1999, for Island Club to purchase a tract of land from King for 
 $450,000.00. Island Club planned to develop a low-income apartment complex on 
 the property utilizing state tax credit financing. In order to obtain the financing, 
 Island Club had to close on the project no later than November 15, 1999, which 
 was provided in the contract.  Additionally, the contract required Island Club 
 to immediately pay $2,500.00 and deposit $27,500.00 into escrow.  The balance 
 of the purchase price was to be paid at the closing.  
Following the execution of the contract, 
 Island Club had difficulty obtaining the required permits for the project.  
 The delay led Island Club to seek amendments to the purchase contract, which 
 would allow for the closing to occur without simultaneous payment of the remainder 
 of the purchase price.  King accepted changes to the original contract by letter.  
 Pursuant to these changes, King would receive a payment of $15,000 towards the 
 purchase price at the closing on November 12, 1999; Island Club would pay $1,500 
 to defray any fees incurred by King; and Island Club would provide a promissory 
 note for the remainder of the purchase price due, payable on February 15, 2000.  

According to Island Club, King agreed 
 to further changes to the contract during a telephone call on November 11, 1999.  
 The alleged oral agreement extended the date of the promissory note until April 
 30, 2000, applied the $15,000 payment to closing costs, and increased the purchase 
 price to $460,000.  
Although the letter changed the closing 
 date to November 12, 1999, the parties met on November 15, 1999 to close the 
 transaction. Prior to closing, King met with du Mas, seeking advice regarding 
 the transaction and its structure because du Mas was familiar with tax credit 
 financing. At the closing, du Mas asked questions on behalf of King regarding 
 the real estate deal and Island Clubs plans.  
Island Club presented closing documents 
 which reflected the alleged oral agreement rather than the written contract 
 or the modifications made in the letter.  King refused to proceed under the 
 terms of the oral contract and required the parties to close pursuant to the 
 original written contract, including the $450,000 payment. Subsequently, King 
 offered to sell the property if he received $100,000 at closing.  Island Club 
 presented testimony that du Mas offered to loan the money to Island Club in 
 exchange for an equity share of the project, though du Mas denied making such 
 an offer.   
Regardless of what du Mas did or did not do, it 
 is undisputed that Island Club never tendered closing documents reflecting the 
 original contract or the terms of the written modification.  Additionally, Island 
 Club was not prepared to abide by the contract or the modification, which required 
 additional monies at the time of closing.  Because the parties could not agree 
 on the terms of the sale, the closing never took place.
King brought a declaratory judgment action 
 seeking a determination of the parties respective rights under the written 
 contracts.  Island Club filed counterclaims against King for breach of contract 
 and civil conspiracy, among other claims. [1]   Island Club also brought a third 
 party action against du Mas.  The third-party complaint alleged du Mas interfered 
 with the contractual relations between King and Island Club and prohibited the 
 closing from proceeding according to the oral agreement.  Additionally, the 
 complaint alleged du Mas interfered with the prospective relationships Island 
 Club would form and would benefit from in the development and construction of 
 the project.  Finally, the complaint asserted du Mas and King conspired to change 
 the terms of the contract to Island Clubs detriment and du Mas attempted to 
 extort an ownership interest in the project by changing the terms on the date 
 of the closing.  
The trial court granted du Mass motion 
 for summary judgment as to all claims in Island Clubs third-party complaint.  
 The court found Island Club presented no evidence that King breached any enforceable 
 contract or that du Mas induced any breach.  The court found du Mas did not 
 interfere with prospective relations between Island Club and Finlay because 
 Finlay is Island Clubs general manager and the two integrally related entities 
 would not cease doing business simply because this particular real estate closing 
 did not occur.  Additionally, the court found there was no evidence du Mas was 
 the reason the real estate closing was not consummated.  Finally, the court 
 found the evidence did not support the remaining substantive claim of a civil 
 conspiracy, and in addition, Island Club failed to plead special damages.    
   This appeal followed.
STANDARD OF REVIEW
In reviewing the grant of a summary judgment motion, 
 this court applies the same standard which governs the trial court:  summary 
 judgment is proper when there is no genuine issue as to any material fact and 
 the moving party is entitled to judgment as a matter of law.  Rule 56(c), SCRCP; 
 Baughman v. American Tel. & Tel. Co., 306 S.C. 101, 114-15, 410 S.E.2d 
 537, 545 (1991).  On appeal from an order granting summary judgment, the appellate 
 court will review all ambiguities, conclusions, and inferences arising in and 
 from the evidence in a light most favorable to the non‑moving party below.  
 Osborne v. Adams, 346 S.C. 4, 7, 550 S.E.2d 319, 321 (2001).
LAW/ANALYSIS
I.       Enforceable Contract
Island Club first asserts the trial court 
 erred in finding the oral modifications were not enforceable or that the closing 
 documents submitted were not sufficient evidence of the contract between King 
 and Island Club.  We disagree and find the trial court properly held the oral 
 modifications were unenforceable.  
The trial court properly relied upon the 
 Statute of Frauds in determining:  Under South Carolina law, a contract for 
 the sale of land must be in writing to be enforceable. S.C. Code Ann. § 32-3-10 
 (Supp. 2003).  Pursuant to Camp v. Springs Mortgage Corp., 310 S.C. 514, 
 517, 426 S.E.2d 304, 305 (1993), the claim may only be based on the existence 
 of a valid contract.  Island Clubs attorney admitted in his deposition that 
 none of the oral modifications were ever placed in writing.  
Island Club also seems to contend the 
 closing documents it provided for signature on November 15, 1999, are evidence 
 of the alleged modifications encompassed in their phone conversation. The documents 
 do not appear in the record on appeal, and therefore, they may not be considered 
 by this court.  See Rule 210, SCACR.  Furthermore, just as the oral modifications 
 themselves fail to satisfy the Statute of Frauds, so too would the closing documents 
 because there is no indication the documents were signed by King.  If King did 
 not sign them, he cannot be held to their contents under section 32-3-10.  Accordingly, 
 we must look solely to the written, original contract and the letter modifying 
 the terms of the original contract, which were both signed by King, to determine 
 whether there was any interference by du Mas.
II.      Intentional Interference with Contractual Relations
Island Club next contends the trial court 
 erred in finding there was no evidence of interference by du Mas in enticing 
 King not to go forward with the real estate closing on November 15.  Additionally, 
 Island Club contends the court erred in finding du Mas was not a stranger to 
 the contract, but was instead a consultant or agent of King.  We disagree.
As found by the trial court:

Under South Carolina law, a plaintiff must establish the following 
 elements to prevail on a claim for intentional interference with contractual 
 relations: (1) the existence of a valid contract; (2) the wrongdoers knowledge 
 thereof; (3) his intentional procurement of its breach; (4) the absence of justification; 
 and (5) resulting damages. Camp v. Springs Mortgage Corp., 310 S.C. 514, 
 517, 426 S.E.2d 304, 305 (1993).

The trial court found that du Mas was 
 entitled to summary judgment on the intentional interference with contractual 
 relations cause of action because, among other reasons, there was no evidence 
 that King breached an enforceable contract.  We agree.
As found above, the only enforceable contract 
 was the original written contract as modified by the letter signed by King on 
 November 1, 1999.  Accordingly, Island Club must show evidence that King breached 
 this contract to support its claim. 
Island Club never presented any evidence 
 of a breach of the written contract by King.  It is well-settled that [o]ne 
 who seeks to recover damages for breach of a contract, to which he was a party, 
 must show that the contract has been performed on his part, or at least that 
 he was, at the appropriate time, able, ready, and willing to perform it.  Swinton 
 Creek Nursery v. Edisto Farm Credit, ACA, 334 S.C. 469, 487, 514 S.E.2d 
 126, 135 (1999) (quoting Parks v. Lyons, 219 S.C. 40, 48, 64 S.E.2d 123, 
 126 (1951)).  Here, Island Club came to the closing prepared only to close in 
 accordance with the oral modifications to the agreement.  The promissory note 
 Island Club produced was due April 30th and not February 15th.  The HUD-1 statement 
 indicated the monies were in accordance with the oral modifications and not 
 the written agreements.  It was only after Island Club sought to close pursuant 
 to the oral modifications that King required the agreement to be completed pursuant 
 to the original contract, which called for a $450,000 cash payment at closing. 

Because Island Club provided no evidence 
 that it attempted to close in accordance with the written agreements, it cannot 
 now complain that King breached the contract.  See id.  Accordingly, 
 we find the trial court properly determined Island Club failed to present sufficient 
 evidence of a genuine issue of material fact regarding whether King breached 
 the written contracts and du Mas intentionally interfered with the contract. 
 [2] 
III.    Intentional Interference with Prospective Relations
Island Club contends the trial court erred 
 in granting du Mas summary judgment on its claim of intentional interference 
 with the prospective contract between Island Club and Finlay.  We disagree and 
 find the trial court properly granted summary judgment to du Mas.

The tort of intentional interference with prospective 
 contractual relations was first recognized in the case of Crandall Corp. 
 v. Navistar [Intern.] Transp. Corp., 302 S.C. 265, 395 S.E.2d 179 (1990).  
 The elements of the cause of action are (1) the intentional interference with 
 the plaintiff's potential contractual relations, (2) for an improper purpose 
 or by improper methods, (3) causing injury to the plaintiff.

 Love v. Gamble, 316 S.C. 203, 214, 448 S.E.2d 876, 882 (Ct. App. 1994).
The Love case also explains what is required to show improper 
 methods necessary to support such a claim.  

Methods of interference considered improper are those means 
 that are illegal or independently tortious, such as violations of statutes, 
 regulations, or recognized common-law rules.  Improper methods may include violence, 
 threats or intimidation, bribery, unfounded litigation, fraud, misrepresentation 
 or deceit, defamation, duress, undue influence, misuse of inside or confidential 
 information, or breach of a fiduciary relationship.  
Methods also may be improper because they violate an established 
 standard of a trade or profession, or involve unethical conduct.  Sharp dealing, 
 overreaching, or unfair competition may also constitute improper methods.  

Id., at 215, 448 S.E.2d at 882-83 (quoting Duggin 
 v. Adams, 360 S.E.2d 832, 836-37 (1987) (citations omitted)).
The trial court specifically found du Mas could 
 not possibly interfere with the relations between Finlay and Island Club because 
 they were essentially the same entity  Finlay was Island Clubs general partner.  
 The court also concluded there was no evidence of wrongdoing on the part of 
 du Mas. We agree there was no evidence of wrongdoing.  In the deposition testimony 
 of representatives of Island Club, no representative could point to any specific 
 method used or anything said by du Mas which caused King to back out of the 
 sale of land, which is the basis for the prospective relationship between Finlay 
 and Island Club.  The only contention raised was the offer by du Mas to loan 
 $100,000 in exchange for an equity interest.  However, the parties admitted 
 it occurred after Island Club sought to close pursuant to the oral modifications 
 and King demanded a cash payment in order to close on November 15. 
Additionally, it was admitted by attorneys representing Island 
 Club and Finlay that they did not recall anything du Mas said at the closing 
 that was not true or was a misrepresentation.  Accordingly, the trial court 
 properly concluded there was no genuine issue of material fact as to whether 
 du Mas intentionally interfered with the prospective relations between Island 
 Club and Finlay.
IV.    Civil Conspiracy
Island Clubs final claim is that the 
 trial court erred in finding there was no evidence of a civil conspiracy between 
 King and du Mas.  We disagree.
The trial court found:

[I]n order for a claim for conspiracy to go forward, the plaintiff 
 must plead and prove special damages, not simply reallege conduct and damages 
 arising from other torts.  See Vaught v. Waites, 300 S.C. 201, 
 208, 387 S.E.2d 91, 95 (S.C. Ct. App. 1989).  In this case, Third Party Plaintiffs 
 have done neither. The facts and damages asserted appear to be identical to 
 the facts and damages alleged in support of their other contract and claims. 

Island Club does not appeal this finding 
 in its brief.  Accordingly, Island Club is bound by this unappealed ruling.   
 See Charleston County Sch. Dist. v. South Carolina State Dairy Commn, 
 274 S.C. 250, 252, 262 S.E.2d 901, 902 (1980) (a party who does not appeal from 
 an adverse decision is bound by the decision); Dwyer v. Tom Jenkins Realty, 
 Inc., 289 S.C. 118, 120, 344 S.E.2d 886, 888 (Ct. App. 1986) (unchallenged 
 alternative findings can support a judgment).  Additionally, there is ample 
 evidence to support the finding of the trial court because the complaint merely 
 realleges the same damages, which were caused by the claims of interference 
 with contractual and prospective relations.   Thus, we affirm the trial 
 courts grant of summary judgment in favor of du Mas on this issue.
CONCLUSION
We find the trial court properly granted 
 summary judgment to du Mas on Island Clubs claim that he intentionally interfered 
 with the contract between King and Island Club because Island Club failed to 
 provide evidence of a breach of an enforceable contract between the parties.  
 We also conclude the court properly found Island Club failed to provide evidence 
 to support its claim that du Mas intentionally interfered with the prospective 
 relationship between Island Club and Finlay.  Finally, we find the trial court 
 properly granted summary judgment to du Mas on Island Clubs claim that he entered 
 a civil conspiracy with King to injure Island Club. 
 [3]   Accordingly, the decision of the trial court is 
AFFIRMED.
 HEARN, C.J., GOOLSBY and WILLIAMS, JJ., concur.

 
 
 [1] These claims are not the subject of this appeal.  The sole claims 
 on appeal arise from Island Clubs third-party complaint against du Mas.

 
 
 [2] Because we find that no breach of contract occurred, we need not 
 address Island Clubs argument that the trial court erred in finding du Mas 
 was a stranger to the contract.  See Futch v. McAllister Towing 
 of Georgetown, Inc., 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (explaining 
 that the appellate court need not address remaining issues when disposition 
 of prior issues is dispositive).  

 
 
 [3] Because we find the trial court properly granted summary judgment 
 to du Mas on all claims raised by Island Club, we need not address the issue 
 regarding the limitation of damages to $50,000.  See Futch, 
 335 S.C. at 613, 518 S.E.2d at 598 (explaining that the appellate court need 
 not address remaining issues when disposition of prior issues is dispositive).