1369

Eugenia S. WEIL, Respondent v. Julius Howard WEIL, Jr., Appellant.
(382 S. E. (2d) 471)

Court of Appeals

*Marvin I. Oberman* and *A. Arthur Rosenblum*, Charleston, *for appellant.*

*William B. Settlemeyer*, Charleston, *for respondent.*

Heard May 17, 1989.

Decided July 10, 1989.

GARDNER, Judge:

We are called upon in this appeal to construe a judgment; very little has been written by South Carolina courts about the subject of construction of judgments. We affirm the appealed order.

## ISSUE

The only issue of merit is whether the trial judge erred by construing a divorce decree to require the father to pay for private school tuition for the parties' minor child without limitation as to type, character or cost of the school. This issue involves several subissues which will be addressed in our discussion.

## FACTS

Eugenia S. Weil (the mother) brought this action against Julius Howard Weil, Jr., (the father) in which she alleged that upon the recommendation of qualified professionals, she had enrolled Howard, the older son of the parties, in Trident Academy, a private school specializing in the education of children with learning disabilities. Howard had been enrolled in other private schools in the Charleston area. The mother alleged that the father was obligated to pay for Trident by a prior divorce decree. The father counterclaimed. The mother's motion for summary judgment was heard by Judge Mendel Rivers, Jr., who denied it. Judge William J. McLeod heard the issues presented by the pleadings and issued the appealed order requiring the husband to pay the tuition for Howard at Trident and also attorney fees.

The parties were divorced by a decree of Judge Joseph W. Board, dated December 28, 1984. The fifteen-page decree incorporates and adopts the agreement of the parties. Judge Board's order recited the parties' agreement and decreed in accordance with it, in pertinent part, that: (1) "the parties will consult with each other on important matters of health, education and welfare, affecting the minor children ...;" and (2) the father is to "be responsible for the cost of private school tuition for the minor children so long as they are enrolled in private school." The mother was made sole custodian of the children. It appears that the parties' counsel took some pains in drafting the proposed decree, and that the parties were aware of its contents before it was submitted to Judge Board.

The record reflects that Howard attended Porter-Gaud, a private school, for the first through the sixth grades; his grades were so poor that the parties placed him in another

private school, College Prep, after the sixth grade. Before placing Howard at College Prep, the parties considered various schools, including Trident Academy. Howard failed three out of five courses in the eighth grade at College Prep. The mother then placed Howard in Trident Academy for ninth grade; this occurred shortly after the parties were divorced. The mother consulted with the father prior to placing Howard in Trident Academy; the father insisted that he did not want Howard at Trident Academy.

Dr. Horowitz, a psychologist, testified that Trident Academy would provide the best local educational setting for Howard because of Howard's learning disability. Dr. Horowitz tested Howard and found that Howard tested average or above average in intellectual functioning, but he had a significant amount of distractability.

Admitted into evidence are several written evaluations of Howard prepared by various psychologists: (1) Dr. Quesenbery reports that although Howard (at age 11) tested average or above average in almost all intellectual functioning, he had significant problems with distractability; (2) Dr. Savage reports that Howard (at age 13) showed no evidence of a learning disability or a severe Attention Deficit Disorder, noting that Howard's low grades were probably due to anxiety, behavior problems and power struggles with his mother and brother (nevertheless Dr. Savage recommended enrolling Howard at Trident); (3) Dr. Brown reported that Howard was doing well at Trident but expressed concerns about "family dynamics"; (4) Dr. Horowitz reported that Howard (at age 15 years 9 months) clearly had an Attention Deficit Disorder and recommended a structured school with a learning disability program.

The father testified that he objected to Howard's placement at Trident Academy because (1) Trident would allow Howard to enter the ninth grade even though he failed the eighth grade and the father thought this was not appropriate; (2) the father feared Howard would be labeled "handicapped" for attending Trident; and (3) Trident did not prepare students for college.

Dr. Silver, a psychologist familiar with Howard and with Trident Academy, testified that Trident Academy is a good alternative for learning disabled students who have had failing experiences in public schools.

The mother testified that Howard is doing well at Trident, and "he is almost a different child" because he has increased self-esteem.

The father testified he did not anticipate the possibility that Howard would be placed in Trident when he agreed to pay tuition for private school in the parties' prior divorce agreement. The father's attorney in the prior divorce case testified, as a proffer, that the father considered only the private schools in which the children were enrolled at the time of the agreement when he agreed to pay tuition for private school. The difference in costs of tuition per year between Trident and College Prep is $6,000.

Martha Williams, guidance counselor for Middleton High School Gifted Program, testified that in Charleston County public schools a committee determines where a learning disabled student should be placed, and they are required to consider the "least restrictive" alternative first; that is, the student will be placed in the regular school program as much as possible. Under this standard, Howard would never have been considered a candidate for a "self-contained" program like the program at Trident, which is considered very restrictive, because his disability was minor.

The father's income increased from $108,000 in 1983 to $163,185 in 1986. His net worth is approximately $1.5 million.

## DISCUSSION
### A.

The father contends that Judge McLeod was bound by Judge Rivers' statement in his order denying summary judgment to the effect that the parties' agreement and the corresponding provisions of the divorce decree were ambiguous. After finding that "there are genuine issues of fact that would make a trial helpful to a fair and just resolution of the dispute between the parties," Judge Rivers went on to state:

> [I]t occurs to the court that it is unreasonable to hold as a matter of law that the parties ... intended [Father to pay tuition at] *any* private school without regard to the nature or the type of school, and the expense of the school. [Emphasis in original.]

The doctrine of the law of the case is not applicable to a statement by the court which does not constitute a binding adjudication. 21 C.J.S. *Courts* Section 195 at 334 (1940). We construe the quoted part of Judge Rivers' order as mere dicta, an expression or statement by the court on a matter not necessarily involved in the case nor necessary to a decision thereof. *Id.* Section 190. The only real issue before Judge Rivers in the mother's motion for summary judgment was the question of whether there were material facts which precluded the granting of summary judgment.

> The doctrine of the law of the case applies to an order or ruling which finally determines a substantial right.... [O]rdinarily an interlocutory order which merely decides some point or matter essential to the progress of the cause, collateral to the issues in the case, is not binding as the law of the case, and may be reconsidered and corrected by the court before entering a final order on the merits.

*Id.* Section 195 at 335, citing *Lucius v. DuBose*, 114 S. C. 375, 103 S. E. 759 (1920) (stating rule that preliminary findings on interlocutory motions bind neither the parties nor the court at the trial on the merits).

We conclude that a judge deciding a case on the merits is not bound by a prior order of another judge denying summary judgment. If the law were otherwise, a party could never obtain relief from an erroneous order denying summary judgement since orders denying summary judgement are never appealable, not even after final judgment. *See Bocook Outdoor Media v. Summey Outdoor Advertising*, 294 S. C. 169, 176, 363 S. E. (2d) 390, 394 (Ct. App. 1987) (an order denying summary judgment "is not immediately appealable nor is it appealable after final judgment."); *Holloman v. McAllister*, 289 S. C. 183, 345 S. E. (2d) 728 (1986) (Supreme Court decision holding the same thing).

We therefore reject the father's contention that Judge McLeod was bound by the implication of Judge Rivers' order on summary judgment that the provisions of the previous divorce decree were ambiguous. And we so hold.

B.

"As a general rule, judgments are to be construed like other written instruments. The determinative factor is the intent of the court, as gathered, not from an isolated part thereof, but from all the parts of the judgment itself. Hence, in construing a judgment, it should be examined and considered in its entirety." 46 Am. Jur. (2d) *Judgments* Section 73 (1969). "[I]f the language employed is plain and unambiguous, there is no room for construction or interpretation, and the effect thereof must be declared in the light of the literal meaning of the language used." 49 C. J. S. *Judgments* Section 436 (1947).

The language of the decree is plain and unambiguous; it says in no uncertain terms that the father shall be "responsible for the cost of private school tuition for the minor children so long as they are enrolled in private school. . . ." Accordingly, there is no room for construction or interpretation and the effect of these plain words must be declared in the light of the literal meaning of the language used. The appealed order did so and accurately reflected the intention of Judge Board when he signed the original divorce decree. And we so hold.

It has been held that the construction of a judgment must be characterized by justice and fairness. 46 Am. Jur. (2d) *Judgments* Section 73 (1969). We hold that this rule likewise requires that the appealed order be affirmed. A careful analysis of the psychological evaluations made of Howard by the several experts summarized under the subject of facts of this decision reflects that Howard is above average in reading and verbal skills and below average in math skills. Howard has an above average I.Q. As noted, in the academic year prior to entering Trident Academy, Howard passed only three of five courses. We were unable to determine from the record before us the causes of Howard's inability to cope with his school work, though various experts expressed opinions. We are concerned about the effect of the divorce on this child and the anxiety produced by the situation in which he lives. We are convinced, however, as were most of the experts whose opinions appear in the record, that the best interest of Howard at this particular point in his life requires that he attend Trident Academy or some other school

which can give special attention to his learning problems regardless of the root cause of these problems. We, therefore, hold that justice and fairness also dictate the affirmance of the appealed order.

### C.

The father argues that the provisions of the agreement incorporated in the divorce decree and which direct the parties to confer about matters of education, etc., mandated, as a condition precedent, that the parties confer and agree about placing Howard in Trident. About this argument the appealed order held:

> c. The provision in the Decree requiring the parties to consult with each other on important matters involving the children's health, education and welfare was intended to and should be given its plain, ordinary meaning, to wit: The parties have a mutual obligation to talk over and discuss such matters with each other. I further find that this provision was not intended to and does not require the Petitioner to obtain the Respondent's permission or approval before exercising her authority as sole custodial parent.

We agree with the trial judge. We therefore reject this contention of the father.

### D.

Finally, we find no merit to the husband's contention that the appealed order failed to set forth salient facts pursuant to Rule 28(c) to support the conclusion that the husband's counterclaim should be denied. We have not discussed the allegations of the counterclaim, but suffice it to say that we find no merit to this issue or the remaining issues presented by the husband on this appeal.

For the reasons given, the contentions of the father in this appeal are rejected.

### CONCLUSION

As noted, judgments are to be construed as other instruments, and the determinative factor in construing a judgment is the intent of the judge who wrote

the order, as gathered not from an isolated part of the judgment, but from all the parts of the judgment itself. We have carefully studied the entire divorce decree and applied the rules of interpreting judgments which are herein quoted. After so doing, we hold that the appealed order should be and is affirmed.

Affirmed.

SANDERS, C. J. and GOOLSBY, J., concur.