## THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

John Deere Construction & Forestry Company,
Respondent,

v.

North Edisto Logging, Inc. and Paul Gunter, Appellants.

Appellate Case No. 2021-000033

———

Appeal From Lexington County
Walton J. McLeod, IV, Circuit Court Judge

———

Opinion No. 6069
Heard November 16, 2023 – Filed July 3, 2024

———

## AFFIRMED IN PART AND REMANDED

———

David Randolph Whitt, of Fleming & Whitt, PA, of West
Columbia, for Appellants.

Amy Holbrook Wooten and Paul A. Fanning, both of
Ward and Smith, P.A., of Raleigh, North Carolina, for
Respondent.

———

**KONDUROS, J.:** John Deere Construction & Forestry Company (John Deere)
filed a breach of contract action arising out of the sale and financing of logging
equipment to North Edisto Logging, Inc. (North Edisto) and Paul Gunter[1]

---

[1] At the summary judgment hearing, John Deere's attorney stated that Gunter,
whose full name was Paul Davis Gunter (Father), had died since the lawsuit had
been filed and there was no estate. The attorney stated Father had been the sole

(collectively, Appellants).  Appellants appeal the circuit court's order addressing John Deere's motion for summary judgment.  Appellants contend the circuit court's order did not have the effect of granting summary judgment to John Deere on the causes of action it raised in its complaint and therefore, the circuit court did not award a $946,378.65 judgment.  Alternatively, Appellants assert that if the circuit court did grant summary judgment on those causes of action and award a judgment, it was erroneous.  Appellants further maintain the circuit court erred in granting John Deere summary judgment on Appellants' counterclaims by (1) concluding a breach of the implied duty of good faith and fair dealing is only actionable if there is also a breach of an express term of the contract; (2) concluding that consideration of John Deere's compliance with the South Carolina claim and delivery statutes[2] was foreclosed by the preseizure hearing; (3) concluding the consideration of issues related to John Deere's loan origination was foreclosed by its ruling on good faith and fair dealing; and (4) acting on Appellants' class action claims before a motion for class certification had been made.  We affirm in part and remand.

**FACTS/PROCEDURAL HISTORY**

North Edisto is a logging business.  North Edisto purchased John Deere logging equipment from Flint Equipment Company (Flint) in West Columbia, and John Deere financed those purchases.  In 2014 and 2015, Father, individually and on behalf of North Edisto, executed five "Loan Contract - Security Agreement[s]" (collectively, the Contracts) with John Deere.[3]  As security for the Contracts, North Edisto gave John Deere a security interest in each piece of equipment purchased (the Collateral).

North Edisto initially made payments towards each of the Contracts.  However, payments later stopped, and the last payment towards any of the Contracts occurred January 13, 2017.  On December 10, 2018, John Deere sent a letter

---

owner of North Edisto, a corporation, and had signed all of the contracts at issue in this case.  Shortly before Father's death, he had transferred his ownership of North Edisto to his son, Paul Rockford "Rocky" Gunter.  Father's daughter, Paula Gunter (Daughter), was North Edisto's corporate secretary.  The record contains no motion to substitute another party in Father's place.

[2] S.C. Code Ann. §§ 15-69-10 to -210 (2005).

[3] Appellants financed the following amounts under the Contracts: (1) $315,966.06; (2) $285,532.00; (3) $196,201.00; (4) $211,532.00; and (5) $429,795.00.  The amount financed by the Contracts totaled $1,439,026.06.

notifying Appellants that payments for the Contracts were delinquent. The letter stated: "**[Y]ou are hereby notified that all of the Contracts have been declared in default and the indebtedness owing under each such Contract has been accelerated and is immediately due and payable**."

On December 20, 2018, John Deere filed a complaint against Appellants asserting five causes of action for breach of contract—one for each contract—and a cause of action for possession. For each breach of contract cause of action, John Deere alleged Appellants owed the following amounts, respectively: (1) $184,577.29; (2) $250,839.11; (3) $150,985.77; (4) $177,136.01; and (5) $454,836.20.[4] John Deere also asserted it was entitled to interest and attorney's fees for each of the Contracts.

On January 8, 2019, John Deere filed a notice of right to preseizure hearing for claim and delivery and an affidavit, sworn by Kathleen Klag-Banks. Klag-Banks stated the total wholesale value of the Collateral was $794,600. John Deere also obtained a bond in the amount of $1,589,200, twice the value of the Collateral.

Appellants filed an answer, raising the defense of unclean hands and counterclaims for breach of loan contracts, negligent supervision—immediate possession, negligent supervision—loan origination, and class action.

Appellants also filed a demand for a preseizure hearing, asserting the affidavit for claim and delivery contained numerous defects. Appellants contended the affidavit did not state (1) it was made subject to the penalties of perjury, (2) the affiant would be competent to testify as to the matters contained in the affidavit, or (3) the substance of the affidavit would be the affiant's testimony in a hearing before the court. Appellants also asserted the affiant did not allege she was authorized to testify on John Deere's behalf, did not state if she worked for John Deere or another entity, and did not provide the capacity of her employment. Additionally, Appellants argued the affidavit did not attempt "to establish a foundation for the conclusory statements it contain[ed]" and did not indicate what records were consulted in reviewing the affidavit and what role the affiant had in drafting the affidavit. Moreover, Appellants maintained the affidavit was defective because it provided a wholesale value for the Collateral without providing any source. They contended section 15-69-30(5) of the South Carolina Code required a statement of the actual value; they maintained "the actual value would be the fair market value resulting from a commercially reasonable sale." Appellants argued John Deere used the lower wholesale value in bad faith to lower the value of the required bond.

---

[4] These amounts total $1,218,374.38.

They also asserted John Deere had not complied with the bond requirements. Appellants further contended "the amount due is the subject of serious dispute."

The Honorable William P. Keesley conducted a preseizure hearing.[5] Following the preseizure hearing, Judge Keesley issued an order for immediate dispossession, ordering Appellants to deliver the Collateral after seven days. Subsequently, John Deere obtained possession of the Collateral. On November 22, 2019, John Deere notified North Edisto it would be selling the Collateral on December 5, 2019, via online auction. John Deere sold the Collateral on the date stated.[6]

On June 24, 2020, John Deere deposed Daughter as the Rule 30(b)(6), SCRCP, representative of North Edisto. Daughter stated that in October 2015, she and John Deere Financial began discussing modifying the loans. Daughter indicated she believed the modification was still under consideration because she never received a denial of her request. She provided she was never asked for financial documents in regards to the loan modification request. Daughter asserted North Edisto had suffered significant losses over the previous four years as a result of several events, including the flood of 2015 and her father's illness.

Daughter also read from a letter from John Deere Financial dated October 8, 2015, which stated:

> The recent flooding conditions in South Carolina may create challenges and concerns for many of our customers at John Deere. With over 175 years of experience, working with those linked to the land, we understand that an event like this gives us yet another opportunity to build trust while working closely with our customers to understand their individual circumstances and needs, and to offer assistance when we are able. Please know that John Deere Financial is here to help find solutions through this difficult time, which position your customers for future success.

---

[5] The record does not contain a transcript of this hearing.

[6] The record contains a spreadsheet for each of the Contracts, which lists numerous attorney's fees, inspection fees, and lien search fees for each of the Contracts. The spreadsheets also list amounts for sales proceeds as well as sales fees. Adding the amounts listed for the sale proceeds, not deducting any of the listed fees, the total sale proceeds amounted to $330,475.

We have been proactive, and in many instances, we may have already spoken with you or some of your customers about the impact from the flooding.  Nonetheless, if you know of customers in your area that need assistance, we would encourage you to please have them call our dedicated toll-free construction and forestry support line . . . .

As always, we are here to help and look forward to working with you and our valued customers.  Thank you in advance for your loyalty, support, and assistance.

Daughter stated the letter was addressed "Dear John Deere Dealer" and Flint sent it to North Edisto.  At that point in the litigation, Appellants had not produced this letter to John Deere.

On August 18, 2020, John Deere filed another affidavit from Klag-Banks.  In this affidavit, Klag-Banks stated she was "a Senior Litigation Administrator with Deere Credit Services, Inc., a servicing agent for John Deere."  She asserted that after the sales of the Collateral, Appellants still owed the following amounts plus interest for the Contracts: (1) $135,460.70; (2) $175,952.13; (3) $123,136.66; (4) $172,660.90; and (5) $339,168.26.[7]  As an exhibit to the affidavit, John Deere provided a letter (Extension Letter) from John Deere Financial, stating: "Pursuant to your request, the payment extension/deferral agreement on [contract 1] has now been processed."  The Extension Letter gave October 25, 2016, as the "Extension/Deferral Effective Date."  The affidavit stated the Extension Letter extended the maturity date for contract 1 by five months.

John Deere filed a motion for summary judgment, asserting no issues of material fact existed and it was entitled to judgment as a matter of law.  It contended Appellants "failed to present any evidence disputing [(1)] the validity and enforceability of the Contracts," (2) "the unpaid balance of the Contracts, or ([3]) the validity and enforceability of [John Deere's] security interests in the Collateral."  Additionally, it argued that no evidence in the record established the elements for Appellants' counterclaims and raised additional reasons the counterclaims failed.

---

[7] These amounts total $946,378.65.

On October 22, 2020, Appellants filed an affidavit from Daughter in response to the motion for summary judgment but did not file any opposing memorandum. In regards to the Extension Letter, Daughter stated:

> 2) I was shocked to see the unsigned form [Extension L]etter . . . . It is surprising to me that such a letter would not have been signed by Paul Whelan,[8] given my extensive discussions with him about the need for a modification. I also find it odd that this letter only covers one of our multiple accounts with [John Deere].
>
> 3) If I had received such a letter, I would have immediately emailed Mr. Whelan to remind him of the pointlessness of modifying only one of our several accounts. The modifications were offered because of the historic flooding that took place in South Carolina and which impacted our entire business, not just one account. Modifying one account because of an industry wide crisis, without addressing the requests as to the other accounts[,] is both arbitrary and symptomatic of the haphazard way Mr. Whelan handled our accounts and fall[s] far short of the standard of good faith and fair dealing.
>
> 4) I requested modifications on all of our accounts because our entire business was impacted by the floods. I was never told that these modifications had been denied[.] In response to my inquiries[,] I was always told by Mr. Whelan that they were still in progress and that he was working on them.

Additionally, Daughter disputed that the sales of the Collateral "were made in a commercially reasonable manner." She stated, "The sales, as originally scheduled, were unreasonably delayed." She indicated "the originally scheduled sales" were canceled due to John Deere and its agents' "ineptitude," which resulted in "further substantial delay." She asserted North Edisto was "damaged by the resulting double expenses for the sales, the continued accrual of interest during the

---

[8] Paul Whelan was a representative for John Deere Financial.

unreasonable delay[,] and the inadequacy of the prices realized by the sales when they belatedly occurred."

Daughter's affidavit also contended, "In the course of several financing transactions that were originated by authorized John Deere dealer Flint . . . , and which form the basis for [John Deere's] claims, documents were submitted giving one set of figures to [Appellants] and [an] inconsistent set of figures to John Deere."[9]  She maintained John Deere "either had actual knowledge of this scheme[] or should have known of its existence in the exercise of reasonable diligence."  She stated, "In two of these transactions, . . . an extended warranty was included in the figures provided to [North Edisto], but excluded from the figures provided to John Deere with the other amounts being increased to keep the total amount the same."  The affidavit argued John Deere "attempt[ed] to explain away this double dealing by asserting that warranty work was in fact performed by the dealer."  The affidavit asserted "this does not excuse the fact that [North Edisto] was sold a warranty at a price that appears to have been conjured out of thin air[] and which appears to have been solely an undertaking of the dealer rather than" John Deere.

Further, the affidavit asserted John Deere's "failure to live up to the standards of good faith and fair dealing are also shown in its failure to exercise due care in supervising the claim and delivery documents filed on [its] behalf."  Additionally, the affidavit reiterated Appellants' assertion made in their request for a preseizure hearing that the claim and delivery affidavit had deficiencies.  Daughter's affidavit

---

[9] Flint and Appellants engaged in separate litigation involving related issues.  *See Flint Equip. Co. v. N. Edisto Logging, Inc.*, Op. No. 2021-UP-282 (S.C. Ct. App. filed July 21, 2021).  In that case, in April 2017, Flint repaired equipment at North Edisto's request and sent North Edisto an invoice, which it failed to pay.  *Id.* at 2. Flint filed an action against Appellants for breach of contract, and Appellants filed an answer and asserted counterclaims.  *Id.*  "The first counterclaim was titled 'Class Action, Rule 23, SCRCP,' and the second and third counterclaims were nearly identical, asserting a breach of the implied duty of good faith and fair dealing."  *Id.* Flint filed a motion to dismiss the counterclaims, and the circuit court dismissed them with prejudice.  *Id.*  On appeal, this court determined "the trial court erred in dismissing [Appellants'] counterclaims with prejudice without affording [Appellants] an opportunity to amend [their] pleadings" and remanded the case to the circuit court.  *Id.* at 2-3.  On remand, Flint and Appellants agreed to dismiss that case.  Case # 2018CP3200079, https://publicindex.sccourts.org/lexington/publicindex.

contended John Deere had "an obligation to exercise reasonable care to make sure that documents filed on its behalf comply with South Carolina law. [John Deere's] failure has damaged [North Edisto] by causing the premature loss of use of the equipment wrongfully repossessed . . . ."

On October 27, 2020, the Honorable Walton J. McLeod, IV (the circuit court) held a hearing on John Deere's summary judgment motion. Following the hearing, the circuit court issued an order stating it granted John Deere summary judgment. The order acknowledged Appellants asserted the Collateral was not sold in a commercially reasonable manner. The order found Appellants failed to show there was any issue of material fact as to their counterclaims. The order stated John Deere sought damages of $946,378.65, but the order did not make a specific award of damages. No motion for reconsideration was filed. This appeal followed.

**STANDARD OF REVIEW**

The purpose of summary judgment is to expedite the disposition of cases not requiring the services of a fact finder. *George v. Fabri*, 345 S.C. 440, 452, 548 S.E.2d 868, 874 (2001). When reviewing the grant of a summary judgment motion, this court applies the same standard that governed the trial court under Rule 56(c), SCRCP; summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Fleming v. Rose*, 350 S.C. 488, 493, 567 S.E.2d 857, 860 (2002). In determining whether a genuine issue of fact exists, the evidence and all reasonable inferences drawn from it must be viewed in the light most favorable to the nonmoving party. *Sauner v. Pub. Serv. Auth. of S.C.*, 354 S.C. 397, 404, 581 S.E.2d 161, 165 (2003).

"A court considering summary judgment neither makes factual determinations nor considers the merits of competing testimony; however, summary judgment is completely appropriate when a properly supported motion sets forth facts that remain undisputed or are contested in a deficient manner." *David v. McLeod Reg'l Med. Ctr.*, 367 S.C. 242, 250, 626 S.E.2d 1, 5 (2006). "At the summary judgment stage of litigation, the court does not weigh conflicting evidence with respect to a disputed material fact." *S.C. Prop. & Cas. Guar. Ass'n v. Yensen*, 345 S.C. 512, 518, 548 S.E.2d 880, 883 (Ct. App. 2001).

"[T]he proper standard is the 'genuine issue of material fact' standard set forth in the text of the Rule." *Kitchen Planners, LLC v. Friedman*, 440 S.C. 456, 463, 892

S.E.2d 297, 301 (2023).[10] "[I]t is not sufficient for a party to create an inference that is not reasonable or an issue of fact that is not genuine." *Id.* at 463-64, 892 S.E.2d at 301 (quoting *Town of Hollywood v. Floyd*, 403 S.C. 466, 477, 744 S.E.2d 161, 166 (2013)).

When a party makes a motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." *Thompkins v. Festival Ctr. Grp. I*, 306 S.C. 193, 195-96, 410 S.E.2d 593, 594 (Ct. App. 1991) (quoting Rule 56(e), SCRCP). "If the adverse party does not respond accordingly, the trial court shall enter summary judgment against him if appropriate." *Coker v. Cummings*, 381 S.C. 45, 54-55, 671 S.E.2d 383, 388 (Ct. App. 2008). "When a party makes no factual showing in opposition to a motion for summary judgment, the trial 'court must grant summary judgment to the moving party if, under the facts presented, the latter is entitled to summary judgment as [a] matter of law.'" *Id.* at 55, 671 S.E.2d at 388 (quoting *S.C. Elec. & Gas Co. v. Combustion Eng'g, Inc.*, 283 S.C. 182, 189, 322 S.E.2d 453, 457 (Ct. App. 1984)). "Rule 56(c), SCRCP, mandates the entry of summary judgment, after adequate time for discovery[,] against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial." *Carolina All. for Fair Emp. v. S.C. Dep't of Lab., Licensing, & Regul.*, 337 S.C. 476, 485, 523 S.E.2d 795, 800 (Ct. App. 1999). "A complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Id.*

## LAW/ANALYSIS

### I. Existence of a Judgment

---

[10] Appellants argue the standard of review is a mere scintilla of evidence. However, after they filed their brief, the supreme court issued *Kitchen Planners*, expressly stating the mere scintilla standard does not apply to summary judgment motions. *See Kitchen Planners, LLC*, 440 S.C. at 463-64, 892 S.E.2d at 301 ("We now clarify that the 'mere scintilla' standard does not apply under Rule 56(c). . . . To the extent what we said in *Hancock* [*v. Mid-South Management Co.*, 381 S.C. 326, 673 S.E.2d 801 (2009),] is inconsistent with our decision today, *Hancock* is overruled.").

Appellants argue that although the ordering paragraph of the summary judgment order is silent about any judgment on John Deere's claim for a deficiency judgment and only references the amount John Deere sought in its complaint, John Deere has asserted in subsequent litigation this circuit court order awarded John Deere a judgment on its claims. Appellants assert this construction of the order is erroneous in light of the circuit court's acknowledgement of Daughter's affidavit stating "the sales were unreasonably delayed, duplicate expenses and interest were incurred, and the sale prices were inadequate." Additionally, Appellants contend the circuit court's statement that they provided no other evidence shows the court impermissibly weighed the evidence. We agree.

"The written order is the trial [court]'s final order and as such constitutes the final judgment of the court." *Corbin v. Kohler Co.*, 351 S.C. 613, 621, 571 S.E.2d 92, 97 (Ct. App. 2002) (quoting *Ford v. State Ethics Comm'n*, 344 S.C. 642, 646, 545 S.E.2d 821, 823 (2001)). "A court order or judgment is construed like any written instrument. Whether a court order is clear and unambiguous is a question of law for the court." *Campione v. Best*, 435 S.C. 451, 458, 868 S.E.2d 378, 382 (Ct. App. 2021) (citation omitted). Likewise, "the interpretation of a judgment is a question of law for the court." *Doe v. Bishop of Charleston*, 407 S.C. 128, 134, 754 S.E.2d 494, 498 (2014).

"The determinative factor [in construing judgments] is the intent of the court, as gathered, not from an isolated part thereof, but from all the parts of the judgment itself." *Id.* at 135, 754 S.E.2d at 498 (quoting *Weil v. Weil*, 299 S.C. 84, 90, 382 S.E.2d 471, 474 (Ct. App. 1989)); *see also Eddins v. Eddins*, 304 S.C. 133, 135, 403 S.E.2d 164, 166 (Ct. App. 1991) ("[I]n construing an ambiguous order or decree, the determinative factor is to ascertain the intent of the judge who wrote the order."). "Hence, in construing a judgment, it should be examined and considered in its entirety. If the language employed is plain and unambiguous, there is no room for construction or interpretation, and the effect thereof must be declared in the light of the literal meaning of the language used." *Doe*, 407 S.C. at 135, 754 S.E.2d at 498 (quoting *Weil*, 299 S.C. at 90, 382 S.E.2d at 474). "An appellate court must view the trial court's statements as a whole to determine its reasoning." *Anderson v. Buonforte*, 365 S.C. 482, 488, 617 S.E.2d 750, 753 (Ct. App. 2005). "Furthermore, '[a]n order should be construed within the context of the proceeding in which it is rendered.'" *Id.* (alteration in original) (quoting *Dibble v. Sumter Ice & Fuel Co.*, 283 S.C. 278, 282, 322 S.E.2d 674, 677 (Ct. App. 1984)).

"Such construction should be given to a judgment as will give force and effect to every word of it, if possible, and make it as a whole consistent and reasonable."

*Eddins*, 304 S.C. at 135-36, 403 S.E.2d at 166 (quoting 46 Am. Jur. 2d *Judgments* § 73 (1969)). "In applying this rule, effect must be given to that which is unavoidably and necessarily implied in a judgment, as well as to that which is expressed in the most appropriate language." *Id.* at 136, 403 S.E.2d at 166 (quoting 46 Am. Jur. 2d *Judgments* § 73).

As used in the South Carolina Rules of Civil Procedure, "'[j]udgment' . . . includes any decree or order which dismisses the action as to any party or finally determines the rights of any party. A judgment need not contain a recital of pleadings, the report of a master, or the record of prior proceedings." Rule 54(a), SCRCP; *see also Judgment*, *Black's Law Dictionary* (11th ed. 2019) (defining judgment as "[a] court's final determination of the rights and obligations of the parties in a case").

The South Carolina Rules of Civil Procedure also provide:

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, . . . the court may direct the entry of a final judgment as to one or more but fewer than all of the claims . . . only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims . . . shall not terminate the action as to any of the claims . . . , and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims . . . .

Rule 54(b), SCRCP.

The South Carolina Rules of Civil Procedure also contemplate a situation in which a case is not fully adjudicated by the determination of a summary judgment motion:

> If on motion [for summary judgment,] judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the court at the hearing of the motion, by examining the pleadings and the evidence before it and by interrogating counsel, shall[,] if

practicable[,] ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted. It may thereupon make an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such further proceedings in the action as are just.

Rule 56(d), SCRCP.

This action began by John Deere filing a complaint against Appellants raising five causes of action for breach of contract and a cause of action for possession. For the breach of contract causes of action, John Deere provided the amount it alleged Appellants owed it under each of the Contracts, as well as asserting Appellants owed it interest and attorney's fees for each of the Contracts. Appellants filed an answer and raised four counterclaims. Following the preseizure hearing, Judge Keesley ordered Appellants to deliver the Collateral to John Deere. John Deere filed a motion for summary judgment, asserting there were no issues of material fact and it was entitled to judgment as a matter of law. It contended Appellants "failed to present any evidence disputing [(1)] the validity and enforceability of the Contracts," (2) "the unpaid balance of the Contracts, or [(3)] the validity and enforceability of [John Deere's] security interests in the Collateral." It also asserted the record contained no evidence of the elements of Appellants' counterclaims and raised other reasons the counterclaims failed. Appellants filed Daughter's affidavit in response but did not file an opposing memorandum.

At the summary judgment hearing, John Deere stated "this is now a claim for a deficiency judgment as a result" of the previous order for immediate dispossession and the resulting sale of the Collateral. It argued the Contracts were "valid and signed" and the transaction histories were correct. John Deere argued Appellants' counterclaims had no merit for multiple reasons. John Deere stated "what we're looking for . . . is an order granting our motion for summary judgment." It stated it "sold the [C]ollateral in a commercially reasonable manner as required by the [Uniform Commercial Code (UCC)]." It asserted Daughter's affidavit stating she did not believe the Collateral was sold in a commercially reasonable manner did not create a genuine issue of material fact because the statement was self-serving. John Deere argued it "met its burden of showing that it has sold the [Collateral] in accordance with the UCC." John Deere concluded its argument by "request[ing] an order granting summary judgment, dismissing the counterclaims with prejudice

by granting the deficiency judgment and allowing for the return of the bond that was posted by John Deere in this case in connection with the claim [and] delivery."

Appellants responded, arguing they had raised issues regarding the manner in which John Deere sold the Collateral. In response to the circuit court's questioning if Appellants deny "they incurred the debt?", Appellants stated, "we don't deny that there was a debt incurred." Appellants further explained, "Our argument is that there are offsets for the various issues we raised . . . ." The circuit court further stated "you don't deny that debt is incurred" and "the [sic] dispute that you owe the money on the contract." Appellants responded "there are no uncredited payments and . . . there is an amount that is due; however, the question is how much are there by way of offsets to those amounts and what is the ultimate net of all those figures?" Appellants argued they were "entitled to have the deficiency judgment . . . reduced by anything that's a consequence of the equipment not being sold in a commercially reasonable manner." Appellants explained those reductions would be "the additional expense, . . . the undue delay, and the interest and other charges that accrued during that undue delay." Appellants further stated "this is not a trial on the merits of the case. This is, is there a material issue of fact to be determined?"

John Deere replied, stating:

> We're here on a motion for summary judgment. We're here based on the evidence that has been presented to the [c]ourt in this case. No evidence has been presented to the [c]ourt by [Appellants] on the issue. They talk about sale dates. They talk about delay. They talk about bites at the apple. They talk about how that might have lowered the price. But there's no evidence.
>
> If there is a dispute about whether John Deere conducted a commercially reasonable sale, then that issue would have to be decided by a judge or a jury. That does end up being a factual issue. I don't think we get there based on the record . . . .

At the end of the hearing, the circuit court instructed each side to prepare a proposed order, which they did. However, the circuit court did not use either of the proposed orders. Ultimately, the order the circuit court issued stated it granted the summary judgment motion. The court did not qualify that it granted the motion

in part but it also did not acknowledge that John Deere's motion was for both its claims and the counterclaims; it simply stated John Deere had moved for summary judgment.

The analysis section of the order addressed only the counterclaims; it does not address John Deere's causes of action. Moreover, in the conclusion section, the circuit court stated Appellants "ha[ve] failed to show that there is a genuine issue as to any material fact on their counterclaim causes of action. Therefore, this [c]ourt is persuaded that [John Deere] is entitled to summary judgment." The conclusion makes no reference to John Deere's causes of action and makes no award of damages for them.

The factual and procedural background section of the order stated Appellants "admitted each of the Contracts are valid and enforceable. [Appellants] also admitted that no payments have been made on any of the Contracts since at least January 2017." The circuit court also noted in this section that in opposition to the summary judgment motion, Appellants argued the Collateral was not sold in a commercially reasonable manner. The court provided, "[Daughter] states the sales were unreasonably delayed, duplicate expenses and interest were incurred, and the sale prices were inadequate. No additional evidence was provided by [Appellants] to support these claims."

Additionally, the order stated:

> [Appellants] have reviewed the line itemed account histories for each of the Contracts, and do not contest that the Transaction Histories accurately account for all payments received from or on behalf of [Appellants]. [Appellants] do not deny some amount of money is owed to [John Deere] under the Contracts. [Appellants] claim, however, they are entitled to certain offsets based on Counterclaims they asserted against [John Deere] including breach of the covenant of good faith and fair dealing, negligent supervision, and a class action claim.

No party filed a motion for reconsideration.

The circuit court's summary judgment order was ambiguous. While the order clearly granted John Deere summary judgment on Appellants' counterclaims, it was not clear as to whether it granted John's Deere's motion as to its own causes of

action.   One interpretation of the circuit court's summary judgment order is that because Appellants did not dispute the transaction histories or that some money was owed, if none of Appellants' counterclaims had merit and if there was no dispute the sale of the Collateral was commercially reasonable, John Deere was entitled to the amount it stated it was owed.  The circuit court ultimately determined the counterclaims had no merit, which we will address later in the opinion.  The circuit court did not explicitly determine whether the sale of Collateral was commercially reasonable.  The circuit court stated that Appellants relied solely on Daughter's affidavit to dispute that the sale was reasonable and provided no additional evidence in support, perhaps implying it found Appellants did not meet their burden.  Under that interpretation, the circuit court granted summary judgment on John Deere's causes of action.  However, we find this interpretation unavailing.

The South Carolina Rules of Civil Procedure provide as to the entry of a judgment:

> (1) . . . upon a decision by the court that a party shall recover only a sum certain or costs or that all relief shall be denied, the clerk, unless the court otherwise orders, shall forthwith prepare, sign, and enter the judgment without awaiting any direction by the court;
>
> (2) upon a decision by the court granting other relief, . . . the court shall promptly prepare the form of the judgment, or direct counsel to promptly prepare the form of judgment, to which may be attached the decision, order[,] or opinion of the court, and after review and approval by the court, the clerk shall promptly enter it.
>
> Every judgment shall be set forth on a separate document.  A judgment is effective only when so set forth and entered in the record.  Entry of the judgment should not be delayed for the taxing of costs.

Rule 58(a), SCRCP.

The listing for this case on the Lexington County Eleventh Judicial Circuit Public Index[11] states: "Disposition: Ended by Non Jury."[12]  However, nothing is listed on the Judgment tab.[13]

The summary judgment order does not state Appellants admitted they owed a certain amount under the Contracts, only that Appellants did not contest any amount in the transaction history.  John Deere's proposed order included the amount due under each of the Contracts and that it was entitled to a judgment in those amounts and also provided it was entitled to interest as well as attorney's fees to be determined later.  However, the circuit court's actual order did not provide any specific amounts or address the entering of a judgment or attorney's fees, which supports the interpretation that the circuit court granted summary judgment on only Appellants' counterclaims.

Additionally, the circuit court's summary judgment order stated that although Appellants contested that John Deere sold the Collateral in a commercially reasonably manner, the only evidence they submitted as support was Daughter's affidavit.  The circuit court erred to the extent this observation suggested Appellants bore the burden to disprove the sale was commercially reasonable.

---

[11] Case # 2018CP3204329, https://publicindex.sccourts.org/lexington/publicindex.
[12] The record includes a copy of this website page.
[13] In between the filing of the initial briefs and the final briefs, Judge Keesley sent an email to John Deere's attorneys, copying Appellants' attorney and this court's Clerk of Court.  In that email, Judge Keesley stated that the Lexington County Clerk of Court had requested he review a proposed execution submitted to her to sign in this case.  He indicated he "only ha[d] a copy of the proposed order" and expressed "some concerns."  He noted the proposed execution referenced a judgment roll number but that number was the common pleas case number.  He also noted the summary judgment order did not recite the amount of the judgment being awarded but acknowledged the body of the order mentioned the amount of $946,378.65.  Additionally, he stated nothing indicates the amount of attorney's fees and costs being awarded.  He also pointed out that there was "no Form 4 order entering judgment."  Judge Keesley further provided he was unclear if the $946,378.65 figure was the amount John Deere claimed Appellants owed it before or after the sale of the Collateral.  Appellants' attorney responded to the email, objecting to the issuance of any execution of judgment, reiterating some of Judge Keesley's concerns and also making similar arguments to those raised in this appeal.

Part 6 of Article 9 of the UCC, pertaining to default in secured transactions, states:

> (a) After default, a secured party may sell, lease, license, or otherwise dispose of any or all of the collateral in its present condition or following any commercially reasonable preparation or processing.
>
> (b) Every aspect of a disposition of collateral, including the method, manner, time, place, and other terms, must be commercially reasonable. If commercially reasonable, a secured party may dispose of collateral by public or private proceedings, by one or more contracts, as a unit or in parcels, and at any time and place and on any terms.

S.C. Code Ann. § 36-9-610 (2003).

Part 6 also provides that in an action in which the amount of a deficiency is at issue:

> (1) A secured party need not prove compliance with the provisions of this part relating to collection, enforcement, disposition, or acceptance unless the debtor or a secondary obligor places the secured party's compliance in issue.
>
> (2) If the secured party's compliance is placed in issue, the secured party has the burden of establishing that the collection, enforcement, disposition, or acceptance was conducted in accordance with this part.

S.C. Code Ann. § 36-9-626(a) (2003).

Part 6 further states:

> (a) The fact that a greater amount could have been obtained by a collection, enforcement, disposition, or acceptance at a different time or in a different method from that selected by the secured party is not of itself sufficient to preclude the secured party from establishing

that the collection, enforcement, disposition, or acceptance was made in a commercially reasonable manner.

(b) A disposition of collateral is made in a commercially reasonable manner if the disposition is made:

(1) in the usual manner on any recognized market;

(2) at the price current in any recognized market at the time of the disposition; or

(3) otherwise in conformity with reasonable commercial practices among dealers in the type of property that was the subject of the disposition.

S.C. Code Ann. § 36-9-627 (2003).

"The question of whether or not a secured creditor has acted in a commercially reasonable manner as to collateral in his possession is ordinarily a question of fact for the jury." *Andrews v. von Elten & Walker, Inc.*, 315 S.C. 199, 203, 432 S.E.2d 500, 503 (Ct. App. 1993).

In sum, Article 9 provides that a secured party does not have to prove it made the sale in a commercially reasonable manner *unless* the debtor disputes the sale was reasonable. At which time, the secured party has a burden to prove the sale was commercially reasonable. *See* § 36-9-626(a) ("(1) A secured party need not prove compliance with the provisions of this part relating to . . . disposition . . . *unless the debtor . . . places the secured party's compliance in issue.* (2) *If the secured party's compliance is placed in issue, the secured party has the burden of establishing* that the . . . *disposition . . . was conducted in accordance with this part*." (emphases added)). John Deere asserted the sale was commercially reasonable, which Appellants then disputed. John Deere then had the burden to demonstrate the sale was commercially reasonable, which it did not do. John Deere did not do anything following Appellants' assertion. Accordingly, the issue of whether the sale was commercially reasonable is still to be determined.

Based on the above, construing the circuit court's order as a whole, we find the circuit court granted summary judgment to John Deere on only Appellants'

counterclaims.  The matter of John Deere's actions for breach of contract remain.[14] We find no judgment has been made on those causes of action.  Accordingly, we remand to the circuit court to proceed on John Deere's causes of action.

## II.  Remaining Issues

We affirm the circuit court as to the remainder of Appellants' arguments pursuant to Rule 220(b), SCACR, and the following authorities:

1.  As to whether the circuit court erred in granting summary judgment on Appellants' counterclaim for breach of the implied duty of good faith and fair dealing: *Atl. Coast Builders & Contractors, LLC v. Lewis*, 398 S.C. 323, 328, 730 S.E.2d 282, 284 (2012) ("Under the two[-]issue rule, where a decision is based on more than one ground, the appellate court will affirm unless the appellant appeals all grounds because the unappealed ground will become law of the case." (quoting *Jones v. Lott*, 387 S.C. 339, 346, 692 S.E.2d 900, 903 (2010), *abrogated on other grounds by Repko v. County of Georgetown*, 424 S.C. 494, 818 S.E.2d 743 (2018))); *Walterboro Cmty. Hosp., Inc. v. Meacher*, 392 S.C. 479, 489, 709 S.E.2d 71, 76 (Ct. App. 2011) ("[W]e can affirm for any reason appearing (or, in this case, failing to appear) in the record."); *Atl. Coast Builders & Contractors, LLC*, 398 S.C. at 329, 730 S.E.2d at 285 ("[A]n unappealed ruling, right or wrong, is the law of the case."); *Ex parte Morris*, 367 S.C. 56, 65, 624 S.E.2d 649, 653-54 (2006) (determining an "unappealed ruling is the law of the case and requires affirmance"); *S.C. Coastal Conservation League v. S.C. Dep't of Health & Env't Control*, 363 S.C. 67, 76, 610 S.E.2d 482, 487 (2005) ("A ruling not challenged on appeal is the law of the case, regardless of the correctness of the ruling."); *Swinton Creek Nursery v. Edisto Farm Credit, ACA*, 334 S.C. 469, 487, 514 S.E.2d 126, 135 (1999) (concluding the court of appeals was correct in affirming "the trial court's determination that [a plaintiff] could not proceed on his [breach of] implied

---

[14] Our finding that the circuit court's order did not grant John Deere's motion for summary judgment on its own causes of action makes no final determination on those issues.  *See Ballenger v. Bowen*, 313 S.C. 476, 477, 443 S.E.2d 379, 380 (1994) ("A denial of a motion for summary judgment decides nothing about the merits of the case, but simply decides the case should proceed to trial.  The denial of summary judgment does not establish the law of the case, and the issues raised in the motion may be raised again later in the proceedings by a motion to reconsider the summary judgment motion or by a motion for a directed verdict." (citations omitted)); *id.* ("[T]he denial of summary judgment does not *finally* determine anything about the merits of the case . . . .").

covenant of good faith and fair dealing claim because he was in default on the contract"); *Parks v. Lyons*, 219 S.C. 40, 48, 64 S.E.2d 123, 126 (1951) ("[O]ne who seeks to recover damages for the breach of a contract, to which he was a party, must show that the contract has been performed on his part, or at least that he was at the appropriate time able, ready and willing so to perform it.").

2. As to whether the circuit court erred in concluding the preseizure hearing foreclosed the consideration of John Deere's compliance with the claim and delivery statute: *Shirley's Iron Works, Inc. v. City of Union*, 403 S.C. 560, 573, 743 S.E.2d 778, 785 (2013) ("An unappealed ruling is the law of the case and requires affirmance."); *S.C. Coastal Conservation League*, 363 S.C. at 76, 610 S.E.2d at 487 ("A ruling not challenged on appeal is the law of the case, regardless of the correctness of the ruling."); *Shirley's Iron Works, Inc.*, 403 S.C. at 573, 743 S.E.2d at 785 ("The doctrine of the law of the case applies to an order or ruling which finally determines a substantial right." (quoting *Weil*, 299 S.C. at 89, 382 S.E.2d at 473)); *id.* ("This [s]tate has a long-standing rule that one judge of the same court cannot overrule another."); *Adeimy v. Dleykan*, 116 S.C. 159, 163, 107 S.E. 35, 36 (1921) (providing that in a claim and delivery action, the defendant "should move to set aside the proceedings so far as the immediate delivery of the property is concerned, . . . [and] should specify the alleged grounds of insufficiency" if the defendant disputes "the right of the plaintiff to claim the immediate delivery of the property" because the affidavit omits an essential element required by statute).

3. As to whether the circuit court erred in concluding its ruling on good faith and fair dealing foreclosed the consideration of issues related to the loan origination: *R & G Constr., Inc. v. Lowcountry Reg'l Transp. Auth.*, 343 S.C. 424, 437, 540 S.E.2d 113, 120 (Ct. App. 2000) ("An issue is deemed abandoned if the argument in the brief is only conclusory."); *Med. Univ. of S.C. v. Arnaud*, 360 S.C. 615, 620, 602 S.E.2d 747, 750 (2004) (noting issues are deemed abandoned when the arguments on those issues are conclusory); *First Sav. Bank v. McLean*, 314 S.C. 361, 363, 444 S.E.2d 513, 514 (1994) (finding the failure to provide arguments or supporting authority for an issue renders it abandoned); *State v. Colf*, 332 S.C. 313, 322, 504 S.E.2d 360, 364 (Ct. App. 1998) (finding a conclusory, two-paragraph argument that cited no authority other than an evidentiary rule was abandoned), *aff'd as modified on other grounds*, 337 S.C. 622, 525 S.E.2d 246 (2000).

4. As to whether the circuit court erred in granting summary judgment on Appellants' class action claims before they had filed a motion for class certification: *R & G Constr., Inc.*, 343 S.C. at 437, 540 S.E.2d at 120 ("An issue is deemed abandoned if the argument in the brief is only conclusory."); *Arnaud*, 360

S.C. at 620, 602 S.E.2d at 750 (noting issues are deemed abandoned when the arguments on those issues are conclusory); *McLean*, 314 S.C. at 363, 444 S.E.2d at 514 (finding the failure to provide arguments or supporting authority for an issue renders it abandoned); *Colf*, 332 S.C. at 322, 504 S.E.2d at 364 (finding a conclusory, two-paragraph argument that cited no authority other than an evidentiary rule was abandoned); *Thornton v. S.C. Elec. & Gas Corp.*, 391 S.C. 297, 304 n.8, 705 S.E.2d 475, 479 n.8 (Ct. App. 2011) ("Although the question of whether a class action should be certified is typically raised by the plaintiff in a motion for class certification, either party may prompt the court to make this determination."); *Ferguson v. Charleston Lincoln Mercury, Inc.*, 349 S.C. 558, 565-66, 564 S.E.2d 94, 98 (2002) (affirming this court's decision "that the issue of class certification was mooted by the dismissal of [the plaintiff's] claim" because the plaintiff "no longer adequately represent[ed] the class"), *overruled on other grounds by Hughes ex rel. Est. of Hughes v. Bank of Am. Nat'l Ass'n*, 442 S.C. 113, 898 S.E.2d 102 (2024); *id.* at 566, 564 S.E.2d at 98 ("Where the named plaintiff['s] claims become moot after class certification . . . , the class claims become moot unless intervenors can be substituted as named plaintiffs.").

**CONCLUSION**

We affirm the circuit court's grant of summary judgment to John Deere on all of Appellants' counterclaims. We remand the matter to the circuit court on John Deere's causes of action.

**AFFIRMED IN PART AND REMANDED.**

**THOMAS and GEATHERS, JJ., concur.**